NICHOLLS, J.
The plaintiff alleges: That it is the owner and possessor of all the merchantable oak, pine, gum, cypress, and other timber 10 inches in diameter upon certain described property. That, in addition to being the owner and possessor of the timber, as aforesaid, it enjoys the right to use the land upon which said timber was growing and standing for the purpose of its removal, and also for the purpose of constructing tramroads, railroads, etc., for the removal of this and adjoining timber, and that it is entitled to the full and exclusive possession of said land upon which said timber is standing and growing, to the exclusion of every one else, save Lemon Smed-ley, the owner of the land. That notwithstanding petitioner is the owner of the timber, and enjoys the right of use and possession of the land above described, and under a title perfect in form and translative of property, and which is of record in the parish of Union, the Lake Lumber Company, a commercial partnership, has entered upon and taken possession of the above-described premises, has cut, felled, hauled, and removed, and is now cutting, felling, hauling, and removing, petitioner’s said timber from the land above described, and, unless enjoined, prohibited, and restrained by the court, the said Lake Lumber Company and their said agents and employés, will continue to cut, fell, and remove said timber from said land. That the cutting, felling, and rémoving of said standing and growing timber, of which it is the owner, by the said Lake Lumber Company, their agents, and em-XDloyés, has been over petitioner’s protest, and that the same has been maliciously, willfully, and wrongfully done by the said Lake Lumber Company and the said individuals composing the firm and the said agents and employés, and in utter disregard of the rights of petitioner.
That the standing timber on the above-described premises, and of which it is the owner, is well worth the sum of $2,100, and that the timber which had been cut, felled, and removed by the defendants is well worth the sum of $1,100, and that if they are permitted to continue to cut, fell, and remove the said timber, and to deprive petitioner of the use, occupancy, and possession of the premises, it will work petitioner serious and irreparable injury. It prayed: That a writ of injunction issue, directed to the said Lake Lumber Company, the individuals composing said firm, and the said agents and employés, and all other agents and employés, enjoining, prohibiting, and restraining them from further using or going upon said premises, and from cutting, felling, and removing any of the standing and growing timber thereon, or in any manner trespassing on the same.
That the said Lake Lumber Company and the said named agents and employés be cited. That the individuals composing said firm, who are absentees, be cited through a curator ad hoe to appear and answer hereto, and that it have judgment, perpetuating and sustaining the injunction herein issued against said parties. It further prayed for judgment against the said defendant Lake *109 Lumber Company and other persons named In solido in the sum of $1,100, being the value of the timber cut, felled, and removed, and in the further sum of $1,000 as damages, punitive and exemplary, for the willful and malicious acts of trespass committed by defendants as aforesaid, and, finally, for all decrees as may be necessary and for relief.
Defendants answered. After pleading the general issue, they averred that in December, 1901, Lemon Smedley gave to W. E. Jackson an option on the pine timber on the land described in plaintiffs petition; that said option was to continue for two years, after which time it was to be null and void. Defendants showed that said time had elapsed, neither the. said Jackson nor any of his assigns having any right, title, or interest in said timber; that said option at the time it was signed by said Lemon Smedley contained the provision that said option was to expire in two years from the date of the signing thereof; that this option is out of their control, but they have been reliably informed that at present the said expiration of two years does not appear in said contract, and that it had been erased by fraud or error.
In the event the court should hold that said option had not expired, respondents averred that said option was null and void, and without force and effect against the said Lemon Smedley or his assigns, for the reason, first, that said option was without consideration; second, the said option was not attested by the said W. E. Jackson, nor by any one authorized by him so as to make the same binding on the said W. E. Jackson; third, that the same being an option was a personal right, and cannot be transferred; fourth, that said option was revoked soon after being signed; fifth, that there was no mutuality in the contract, and everything in said document was left to the will of the grantee and an agreement with a potestative condition, a nudum pactum, and for these reasons null and void; sixth, that it was specially agreed and understood in said option that, unless the Hamburg & Southern Railroad should be built to Ear-merville and Marion within two years from the date, said option should be null and void; that the Ruston, Hamburg & Southern Railroad has never been built to this date, nor was any road completed to Farmer-vill'e or Marion within two years from the date of the above alleged option, a copy of which is hereto attached and made part hereof.
In view of the premises, defendants prayed that plaintiff’s demand be rejected at their cost.
The district court rendered judgment in favor of the defendants, and rejected plaintiff’s demand and dissolving the injunction which had issued. Plaintiff has appealed.
On the 10th of June, 1901, Lemon Smed-ley, a colored man, signed the following instrument:
“This contract and agreement made and entered into on this the 10th day of June, 1901, by and between Lemon Smedley party of the first part and W. E. Jackson party of the second part witnesseth that the party of the first part being sole owner of the following described lands to-wit: W. % of S. W. % Sec. 15 and W. % of N. W. % Sec. 17 T. 23 R. 3 East, containing 160 acres more or less has granted, bargained and sold and does by these presents, sell, transfer and convey unto said party of the second part, his successors, heirs or .assigns, all of the merchantable oak, pine, gum, cypress and other timber 10 in. and up at stump growing, standing or being on said land for the sum and price of 50$ per M payable at the end of each month as same shall be cut and removed.
“That for the purpose of felling, cutting and removing said timber, the party of the second part, his heirs or assigns shall have possession of said lands and the right to cut and construct roads and tramways, over and through and upon same, and the right to use same for the removal of the timber he may buy on lands adjoining and beyond that described herein, and to have free ingress and egress for his employes teams and vehicles into, upon and off the same.
“The party of the second part shall cut and remove said timber as expeditiously as possible, and it is agreed that unless he shall remove all the same, within a period of ten years from the date hereof he shall be responsible for and *111 pay to first party the full amount of taxes assessed against said lands after the expiration of said period of 5 years from this date until such time as said timber is removed and possession returned to said first party.
“It is further agreed that whenever said timber shall have been removed the party of the first part shall enter into full possession of said land at once, whether the time for such removal be expired or not, provided, that all right of railroad and right of way herein granted shall be perpetual. Said right of way not to be less than fifty feet wide and may be used for a regular freight and passenger railroad.
“That in case of the sale, lease or transfer of said land, the party of the first part agrees to reserve and protect the rights of the second party to said land under this contract.
“Done and signed in the presence of the undersigned witnesses on the day and date first above written.
“Attest: Lemon Smedley.
“C. T. Simmons.
“W. B. Powell.”
Across the face of the instrument are written the words:
“It is hereby agreed that in case the Hamburg, Ruston and Southern Railway is not completed to Farmerville within two years and to Marion within 3 years, this contract is null and void.”
This instrument was recorded in Union parish on the 14th of March, 1902.
Jackson did not sign this instrument nor accept it.
Op the 3d of June, 1902, W. E. Jackson signed the following paper:
“Know all men by these presents that I, W. P. Jackson, a resident of Ruston, Lincoln parish, Louisiana, for and in consideration of the sum of ten dollars, ($10) to me in hand paid by John A. McShane and other valuable considerations, have granted, sold and conveyed and by these presents, do grant, sell and convey unto the said John A. McShane of Omega, State of Nebraska, all and singular the various timber contracts on lands which I now own, being all the contracts which I have made heretofore for the purchase of timber upon lands situated in Lincoln and Union parishes in the state of Louisiana, hereby selling and resigning all of my right, title and interest in and to said timber contracts now standing and being in my name, whether of record or not: To have and to hold the same unto the said John A. McShane, his heirs and assigns forever.
“Witness my hand at Ruston, La., on this 2d day of June, 1902.
“Witnesses: ,W. E. Jackson.
“W. A. Mitchell.
“A. H. Mayfield.”
This instrument was recorded on June 5, 1902. Jackson had up to that time neither signed nor accepted the original act. No particular property is described or referred to- in this act. Jackson’s signature appears in connection with the original writing for the first time in a notarial act before Barks-dale, notary public, on the 3d of June, 1903, wherein five persons (among them Jackson) appeared, declaring that:
“They and each of them owned in fee simple and undivided with John A. McShane in and to all the standing timber and property rights, privileges, franchises, usufruct, and servitudes set forth and described and bargained, sold, and conveyed in the following timber deeds or acts of sale and conveyances.”
The extract from his act filed in this case does not copy the different acts to McShane, but refers to the property in question as follows:
“From Lemon Smedley dated June 10, 1901. Recorded in Book 10, p. 30.”
These five parties then went on to declare that:
“Said deed or sales, though apparently made to John A. McShane, were in truth and fact made to and owned by themselves in indivisión with McShane, he holding the timber and property rights, privileges, and so forth, described and conveyed in said deeds in trust as trustees for themselves.”
They then fixed the interest of each of the parties in these rights or properties. They then declared that two of the number, W. H. Ragem and John Lockwood, had acquired by purchase from McShane his entire interest in said rights (the timber and realty conveyed by said deeds) in consideration of $32,500, with full warranty and subrogation as appeared by the deed of McShane of record in Union parish by appearers for the joint account of interest of each of them in the proportion that the interest of each was originally before the purchase of McShane’s interest as set forth in the act. They then declare:
“They jointly and severally accepted said deed and the real rights conveyed thereby, and as *113 sumed all the duties and obligations imposed therein, viz.:
“The obligation to construct or to cause to be constructed the standard-gauge railway northerly through the parish of Union to a connection with the line of road of the El Dorado & Bas-trop Railway Company in Union county, Ark., and within the limits and upon the course or route specified in said deeds, and have entered upon the construction of said railroad and are now in the actual construction of said railroad under and in accordance with the terms and stipulations of said deeds.
“To pay all taxes assessed against said timber and real rights conveyed by said deed.
“To pay to said vendors, their heirs or assigns, 50 cents per 1,000 feet for said timber monthly as the same shall be cut and removed by these appearers, their heirs, or assigns, and generally to do and perform all other things provided for in said deeds to be kept and performed by said grantees, their heirs, and assigns, of whatever kind, character, and description.”
The plaintiffs herein claim, as assignees by different conveyances from the parties to the parties to the act just referred to, to be the owners of all the timber on the Smed-ley land, making the act of June 10, 1901, the basis of their rights.
The district judge in his reasons for judgment said:
“There is nothing in this document [the original document] to show that Jackson, the ven-dee, ever obligated himself to build the Hamburg, Ruston & Southern Railway as a part of the consideration of the sale by Smedley. The road was not built in the specified time, and, as far as that is concerned, it never has been built, nor was another road built to Farmerville and Marion within the time named. If the building of the Hamburg, Ruston & Southern Railway was not dependent on the will of W. F. Jackson, the declaration in the contract which has been quoted should be construed according to article 2038 of the Revised Civil Code. And, construed according to the law of that article, the contract became void at the end of two and three years, and neither W. F. Jackson nor his assigns had any rights thereunder. But, conceding that the building of the Hamburg, Ruston & Southern Railway was a part of the consideration of the sale to Jackson, and that the building of it was dependent upon his will, the law then by which the above condition would be governed would be found in article 2047 of the Revised Civil. Code. (Gayden v. Louisville N., N. O. & T. R. Co., 39 La. Ann. 269, 1 South. 792.)
“In other words, had the road been built, but not in the specified time, still, if Smedley had remained silent, he could not be heard to complain. The consideration under such circumstances would b.e considered as fulfilled. This is unquestionably the law as contained in a number of decisions of the Supreme Court. James v. Arkansas Southern Ry. Co., 110 La. 148, 34 South. 337; Vicksburg S. R. R. Co. v. Elmore, 46 La. Ann. 1237, 15 South. 701; Mower v. Kemp, 42 La. Ann. 1007, 8 South. 830.
“But in reality the road was never built. It is true that the evidence discloses that the Far-merville Southern Railroad after the expiration of the time was completed from Litroe to Farmerville. by way of Marion, evidently covering a portion of the contemplated route of the Hamburg, Ruston & Southern. There is nothing, however, to show that this road is the successor to the Hamburg, Ruston & Southern, or that it ever assumed the undertakings of the contemplated road, or had any connection with the making of the contract between Jackson and Smedley.
“The contract in this suit expressly states that its nullity arises out of the failure to complete the Hamburg, Ruston & Southern Railroad. It does not stipulate that the building of any other road will satisfy its conditions.
“Of course, it would be a matter of little consequence if Jackson or his successors had built the road under another name. But this is not the case, and all that is contended is that a road has been built along a portion of the route and near the defendant Smedley. This road bears a different name, is under no obligation to extend either to Hamburg or Ruston, with nothing to show that it was built with the purpose of complying, with the stipulations in the timber contract. There is no agreement in the contract that the building of the Farmerville & Southern would satisfy the vendor. The Hamburg, Ruston & Southern Railway neither in name nor fact has been built, and the contract was forfeited by such failure. The plaintiffs, if they had examined the records, as they should have done, would have discovered that the life of the Jackson contract depended on the building of the Hamburg, Rus-ton & Southern Railway, and by further inquiry they could have ascertained that the road has never been built. They cannot claim that they were innocent purchasers, without knowledge of these conditions.
“It may be contended that Smedley cannot rely on the nullity of the contract until he has sought to have that nullity judicially decreed. That is just what he has asked in this suit. Such demand may be made by way of exception or defense, as well as in a direct action. Rev. Civ. Code, art. 2047.
“For the reasons given herein and others assigned orally, the court is of opinion that the contract of Lemon Smedley with W. F. Jackson, dated June 10, 1901, is null, and for that reason plaintiff’s action should fail.”
Plaintiffs contend that the act of June 10, 1901, is not an option nor the sale of an *115 option; that it is an absolute, unconditional sale by its very terms; that it is a grant in prtesenti; that they acquired at once through that act the ownership of the timber; and that nothing has occurred since that sale to divest them of their vested rights. We do not take the same view as counsel do of that act. We do not think that title to the timber was conveyed by it to Jackson. The latter did not sign that act, or place himself under any obligations under it as a vendee, nor did McShane do so in the act of June 2, 1902.
Up to the act of June 30, 1903, more than two years after the signing by Smedley of the act relative to the timber, Jackson had done and said nothing which committed him in any way to anything under the act of 1901, and no one else had done so. Jackson was not at liberty to leave the matter open during all that time, seeking to hold Smed-ley bound, hut leaving himself free to take such action at his own will, and as his own interests might dictate later. Nickerson v. Allen, 110 La. 194, 34 South. 410; Civ. Code, arts. 1766, 1800-1802, 1804-1806. There was no mutuality in the act of 1901. If Jackson refused to take the timber, Smedley had no action for damages or for a specific performance. Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1.
The plaintiffs present themselves, claiming under a document which on its face declares that the agreement or contract under it was to be null and void “in case .the Hamburg, Ruston & Southern Railway to Farm-erville is not completed within two years and to Marion within three years.” That stipulation hound Jackson and all parties holding under with him. Smedley and Jackson had each the legal right to make that stipulation, regardless of its being or not unreasonable. Parties have the right to make in their contract stipulations that their will can suggest, except such as are forbidden by law. Rev. Civ. Code, art. 2013. The circumstances under which that stipulation was placed in the act are not explained. Jackson, as well as Smedley, could have availed himself of it. It left the door wide open to him to escape from all responsibility under the act, if he had otherwise incurred ány. When the Hamburg, Ruston & Southern Railway was not completed to Farmerville within the time prescribed in the stipulation, the rights of parties under it, whatever they might be, fall, as, under its express terms, the agreement was to be therefrom null and void. Rev. Civ. Code, art. 2038.
Plaintiffs urge that a railroad has been built in close proximity to the Smedley land, and he has gained substantially the same advantages as he would have gained had the particular road named been built, and he has no reason to complain; but this is not a case for the application of the doctrine of equivalents. It is immaterial whether he should have gained or lost. The crucial question is: Was the particular road whose non-completion it was stipulated would carry with it the nullity of the agreement built within the time fixed? If it was not, the situation was not saved by some other road having been built with the same or even greater advantages.
We are of opinion that the conclusions reached by the district court as to the rights of the parties were correct, and the judgment appealed from is affirmed.