and to be tried or imprisoned as said ordinances provided.

The marshal did not propose to keep him in arrest himself, or to proceed at once against his property, but to cause his rights and obligations to be tested by the judicial tribunal appropriate and competent for that purpose. Before that tribunal and at that trial plaintiff had full opportunity to defend himself, by raising and having adjudicated the same issues which he is attempting to now raise and have decided by the district court, with the right to a direct appeal from the decision of the mayor's court to the Supreme Court on these issues. Instead of submitting them to the court having direct and immediate jurisdiction over the subject-matter, he determined to oust that tribunal of its jurisdiction in the premises, and by anticipation he himself elected the district court as the tribunal which should primarily pass upon the issues he proposed to raise. This he was not entitled to do. Murat v. New Orleans, 119 La. 514, 515, 44 South. 279. The occasion was not one for precipitancy. His rights were in no immediate danger. He would suffer no irreparable injury by letting matters take an orderly and regular shape. He had ample, immediate remedy under the law, without the need of calling into exercise the equity powers of any court. On the district court's deciding it had no jurisdiction to pass on the issues in manner and form and under the circumstances they were presented to it, plaintiff has taken an appeal to the Supreme Court, evidently claiming that he has raised an issue in the district court as to the power and authority of the town of Farmerville to pass the ordinances, and as to their legality and constitutionality. On the correctness of that theory alone could this court have appellate jurisdiction in the premises, but that theory has no legal basis to rest on. There are not, nor as matters have shaped themselves can there be, such issues before this court. The issues he imagines he raised in the district court were never raised, nor are they now legally pending there. The district court refused to have them raised in that court. It has never taken cognizance of them, and has refused to do so. They are not now, and legally speaking they have never been, before it. The district court has never in the slightest degree passed upon them. Plaintiff's desire that they should be before that court, and his attempt to bring them before that court, did not succeed. There has been no issue raised in the district court over which this court has appellate jurisdiction.

For the reasons assigned, the appeal herein taken is dismissed.

---

(46 South. 341.)

No. 16,713.

W. B. THOMPSON & CO. v. UNION SAWMILL CO. et al.

(March 16, 1908. Rehearing Denied April 27, 1908.)

1. ASSIGNMENTS — CONTRACTS — MUTUALITY— CONSIDERATION.

The rights which defendants assert as transferees under the instrument which they set out in their answer are neither just nor well founded, as that instrument for want of mutuality and serious consideration did not evidence a valid and binding contract.

2. LOGS AND LOGGING—LICENSE TO CUT TIMBER—CONSTRUCTION—NONPERFORMANCE.

The instrument on which defendant as transferee thereunder bases its rights was not signed by the party named therein as the party of the second part, nor did he take upon himself the obligations of a purchaser of all the timber upon plaintiffs' land, neither did he take upon himself the obligation of constructing or causing to be constructed the Hamburg, Ruston & Southern Railway, or some other standard gauge railway, through that section within two years of the date of that instrument. It was stipulated in the instrument referred to that if such road should not be completed within two years from the date of the instrument that the agreement should be null and void. A road was not completed within the time fixed, and if any rights had accrued prior to the time fixed in favor of any one under the license granted to cut and remove timber, to be paid for when cut and removed (which was not the fact), that right

ended when the two years expired and the road had not been completed.

3. SAME.

The stipulation on that subject was the controlling stipulation of the whole act—all the other clauses and stipulations in the instrument were held in check and subordinated and governed by it.

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Union; Robert Brooks Dawkins, Judge.

Action by W. B. Thompson & Co. against the Union Sawmill Company. Judgment for defendants, and plaintiffs appeal. Reversed.

Clayton, Hawthorn & Atkinson and Elder & Moore, for appellants. Lamkin, Millsaps & Dawkins, for appellees.

## Statement of the Case.

NICHOLLS, J. Plaintiffs allege that they are the owners of certain lands, which they described, and the timber thereon.

That on or about the 19th of May, 1903, they, without any consideration therefor, signed a written instrument purporting to be an offer to sell a license to cut and remove the pine timber standing on their lands to John A. McShane, of Omaha, Neb.; that said offer was personal to him and was never signed and accepted by him, said McShane.

That the Union Sawmill Company had recorded or caused to be recorded in Deed Book 18, of the conveyance records of said parish, a pretended deed to the said timber on petitioner's said lands, and was fraudulently pretending to be the owner of said timber under and by virtue of a pretended chain of title from the Pine Hill Lumber Company, Limited, and tracing by mesne conveyance from the said Pine Hill Lumber Company, Limited, to petitioner, based upon the said pretended McShane instrument hereinabove set forth, and which was made a' part hereof for greater certainty of description only.

That said pretended contract and the pretended ownership of the said Union Sawmill Company based thereon was absolutely null and void for the following reasons, to wit:

(1) That it was stipulated in said contract as follows:

"It is agreed that in case the Hamburg, Ruston & Southern Railway, or some other standard gauge railway, is not completed through this section within two years from the date hereof, this contract shall be null and void."

Petitioner represented that no railroad was completed through this section of the parish within two years from the date of this contract as contemplated.

(2) That said pretended contract purported to be merely an offer to sell a license to cut and remove said timber to the said McShane, and was and is without consideration, and was personal to him, which said offer was never signed and accepted by the said McShane.

(3) In the event the court should hold the said pretended contract was not null and void for the reasons above alleged, then and in that event only, and in the alternative, petitioner alleged that the said pretended contract was null and void for want of mutuality; that the said McShane did not bind himself to cut and remove the said timber or to pay the price or to do or perform, or not to do or perform any act or thing thereunder whatsoever; that the conditions therein contained instead of binding or obligating the said McShane to do or perform or not to do or perform any act or thing thereunder, as aforesaid, were cunningly and fraudulently designed and intended by him, the said McShane, to enable him to cut and remove the said timber or otherwise to take advantage of the conditions in so far as it bound and obligated, or purported to bind and obligate, petitioner, if he so desired, or to leave him free and unbound in every particular, in the event he might at any time see fit to cut and remove the said timber or

to do or perform any act or thing thereunder; that the pretended price or consideration set forth in said pretended contract was not fixed definitely nor determined, nor did he ever bind himself to pay it should the court hold that the said price was fixed.

(4) That if the court should hold that said pretended instrument was not null and void for any reasons hereinabove set forth and in that event only, and in the alternative that it was null and void for the reason that its conditions had not been complied with.

That the recordation of the aforesaid instrument purporting to be an offer to sell a license to cut and remove the said timber to the said McShane and the recordation of the pretended deeds and claims of ownership of the Union Sawmill Company as aforesaid had damaged petitioner in the full sum of $500, and that the timber thereon was worth, at least, the sum of $2,500. That petitioner was entitled to judgment decreeing said pretended contract as an absolute nullity, and ordering the clerk of court and ex officio recorder of Union parish, La., to erase and cancel the same from the records of Union parish, and for damages as above set forth.

Petitioners alleged amicable demand without avail.

In view of the premises they prayed for citation and service thereof on the Union Sawmill Company, and on the Pine Hill Lumber Company, Limited. He further prayed that the court appoint a curator ad hoc to represent the absentee John A. McShane; that after due proceedings there be judgment in favor of petitioners and against defendants, the Union Sawmill Company, the Pine Hill Lumber Company, Limited, and John A. McShane, decreeing the aforesaid pretended license or option to the said McShane and deeds or claims of the said Union Sawmill Company and the said Pine Hill Lumber Company, Limited, based thereon, an absolute nullity, and ordering the clerk of

121 LA.—11

court and ex officio recorder of Union parish, La., to erase and cancel the same from the records of your parish and state, and finally for damages against the said defendants in the full amount set forth.

Petitioners prayed for all such orders and decrees as the facts and circumstances of the case may warrant, and for full, general, and equitable relief.

The Union Sawmill accepted service of the petition through its counsel, and a curator ad hoc was appointed to represent John A. McShane, who acknowledged citation on him. The petition was filed on March 16, 1907.

On March 28, 1907, the plaintiffs filed a supplemental and amended petition in which they averred that the Union Sawmill Company were trespassing on the lands belonging to and described in their original petition; that they were themselves in the possession of said lands through themselves and their agents, and that the Union Sawmill Company was trespassing thereon, entering thereon, and cutting, destroying, and taking away the pine timber standing and growing thereon, and erecting, constructing, and operating tramroads, all against petitioner's will, and unless restrained and prohibited by the court they would continue to trespass on said lands and cut said timber and construct and operate tramroads to the great and irreparable injury of petitioners, and disturb them in their real and actual possession which petitioners had for more than one year and on the said land over which they claimed the ownership, the possession, and enjoyment.

That the aforesaid acts made their lands less valuable, and that the destruction of the said timber and other said acts of trespass would compel petitioners to use said land for different purposes than that for which it was intended, and that in view of the irreparable injury thereunder to petitioners and their said land a writ of injunction should issue from the court directing and commanding

and restraining said defendant, the Union Sawmill Company, its officers, agents, and employés from further trespassing on said land, and from further cutting any of the standing and growing timber thereon; that petitioners had already been damaged in the sum of $500 by the aforesaid wanton and malicious trespass.

Adopting and confirming all the allegations and prayers hereinbefore filed, plaintiffs prayed that a writ of injunction issue from the court, directing, commanding, and restraining the Union Sawmill Company, its officers, agents, and employés from further trespassing on the certain lands they described; that after due proceedings had that there be judgment in favor of petitioners, sustaining and perpetuating the writ of injunction herein sued out; that they have and recover judgment against the Union Sawmill Company for $500 with legal interest from judicial demand, and that their right be reserved to all other damages caused by said trespass. They further pray for all necessary orders and decrees, and for general and equitable relief.

Injunction issued as prayed for. Defendant answered, denying generally the allegations made in plaintiff's petitions, original and amended, except as to such matters and things as should be thereafter specially admitted.

Defendant averred that it was the owner and holder of all the merchantable white oak, cypress, and pine timber growing, standing, and being on the lands described in plaintiff's petition by virtue of a conveyance of the same by the Pine Hill Lumber Company, Limited, on October 31, 1906, as per deed of record in Deed Book 18, page ———— of the notarial records of Union parish. That it held the said property as owner through mesne conveyance from the plaintiff to John A. McShane by virtue of a contract made and entered into on the 19th day of May,

1902; that it was the beneficiary of all the stipulations made and contained in the said contract in favor of the said McShane, his heirs, successors, and assigns.

That in accepting title from the Pine Hill Lumber Company, Limited, it acted in good faith without knowledge of any equities whatever, if any there be, between the Pine Hill Lumber Company, Limited, its vendor, or the said McShane, or any one else, and the said W. B. Thompson and P. L. McCay, original vendors and plaintiffs herein.

That it and the other holders and owners of the said timber prior to the conveyance to respondent had paid all the taxes assessed against same, with the full knowledge and consent of plaintiffs and in exact compliance with the stipulations in said original contract which imposed that duty upon the said McShane, his successors and assigns.

That one of the controlling considerations for the said contract was the obligation negatively assumed by the said McShane to bring about the construction of the Hamburg, Ruston & Southern Railway or some other standard gauge railway, to the town of Farmerville in your said parish and state; that at the date of the said sale, and prior thereto the parish of Union, La., was without railroad communication to the markets of the world except via the rails of the Arkansas Southern Railway Company which merely skirted the extreme western border of the parish more than 15 miles from Farmerville, the parish site of said parish, and a greater distance from Marion, Cecil, and other points and towns in said parish; that under these circumstances and conditions trade and commerce which formerly centered at Farmerville, Marion, and Cecil was gradually drifting away to other points where railroad facilities were enjoyed to the detriment and commercial injury of less favored sections and towns; that the lands and timber there-

on were without appreciable value on account of the want of transportation, and that the plaintiff herein, as well as other persons similarly situated, had a large interest in securing the construction of the proposed railroad.

That at the time of the execution of said deed from W. B. Thompson and P. L. McCay to John A. McShane, as aforesaid, neither said McShane nor any of his associates were residents of the parish of Union, La., or had any interest of any kind or character therein.

Defendant specially denied that it held said timber under an option, or that the authors of its title or any of them held said timber under an option, and averred that said John A. McShane acquired said timber from said W. B. Thompson and P. L. McCay by warranty deed regular in form, expressing a fair and legal consideration, and which was in like manner conveyed on down by said successive conveyances to your respondent; that the consideration for said timber bought from said W. B. Thompson and P. L. McCay by the said John A. McShane was as follows, to wit:

First. The said grantee, John A. McShane bound himself, his heirs, successors and assigns to remove the timber from the lands upon which it was growing, within 10 years from the date of the said deed, with the right to prolong this period 10 additional years by paying to the grantor, his heirs or assigns, 10 per cent. per acre per year for each acre from which the timber shall not have been cut and removed during the prolonged period.

Second. To render for tax assessment and promptly pay all taxes upon the timber conveyed by said deed.

Third. To construct or cause to be constructed a standard gauge steam railroad from Farmerville through the towns of Marion and Cecil, and through the parish of Union, La., to a connection with another or other railroads reaching to the markets of the world whereby the merchants of said towns, said grantor, and the people of said parish should enjoy rapid communication with the world's market for their produce.

Fourth. To pay said grantor, his heirs and assigns, 50 cents per 1,000 feet for said timber when cut and removed.

That it and its several authors acquired under the same terms and conditions and for the same price large quantities of the same character and quality of timber from numerous other persons, residents, and non-residents of the parish of Union, La., and with plaintiff and all of said other grantors, respondent and its several authors accepted said deed and deeds, and obligated and bound itself to keep and perform all of the duties and obligations imposed upon the original grantee in said deed and deeds and promises made therein by the said grantee.

That acting in perfect good faith with the plaintiff and all of said grantors H. W. Ragan, Frederick D. Hagar, John Lockwood, George T. Ross, and W. F. Jackson, associates and assignees of the said John A. McShane, and the vendors of the Pine Hill Lumber Company, Limited, entered into a written contract and supplemental contract on February 14, 1903, with the St. Louis, Iron Mountain & Southern Railway Company for the construction of a standard gauge steam railroad from the town of Farmerville northerly through the parish of Union via the towns of Marion and Cecil to a connection with the Little Rock & Monroe Railway Company in the state of Arkansas, in exact accord with the terms, conditions, and stipulations and provisions of said deed and deeds in compliance therewith at a cost of $294,934.31 in cash; that to induce the said St. Louis, Iron Mountain & Southern Railway Company to construct said Farmerville & Southern Railway said above-named parties and vendors of the Pine Hill Lumber Company, Limited, bound and obligated themselves, their successors and

assigns to ship over the same when constructed and in operation all of said timber when cut and manufactured into lumber and sawmill products when cut and removed from said lands as provided in said deed and deeds, and further bound themselves, their successors and assigns to give to said railway company all rights of way, depot grounds, and terminal facilities at Farmerville and along the line of said road, and to pay it the sum of $6,000 in cash, and to furnish free of cost to it all timber for ties and bridges used in the construction of said road; that the said sum of $6,000, given as a bonus by the said parties to the said railway company, as aforesaid, for the construction of said road, was promptly paid and acquittance granted therefor.

That said railroad was constructed and put in operation and under said contract within the time limited in said deeds and in strict accord with the stipulations and provisions thereof to be kept and performed by the said John A. McShane, grantee, his successors and assigns; that the said Pine Hill Lumber Company, Limited, and its vendors, furnished at its and their expense, and free of cost to said railway company, all rights of way, station grounds, and terminal facilities used by it along its entire length; that it and they furnished, free of cost to said railway company, all bridge and tie timber used in the construction of said railroad, paid to it the sum of $6,000 in cash as aforesaid, as provided in said contract, and executed and delivered to said railway company bond, with approved security in the sum of $25,000, guaranteeing the tonnage over its rails from said timber when cut by said parties, their successors or assigns, as provided in said deed or deeds; that plaintiff never at any time objected to the building of said railroad or the assessment of said timber as the property of respondent, or its vendors, or the payment of the taxes thereon, by it, until the institution of this suit, and

that no question was ever made of the validity of the conveyance, or any of its terms, or of the considerations therein stipulated until long after the railroad from Arkansas through Marion and Cecil into Farmerville had been constructed and put in operation, and the timber acquired as aforesaid had been sold to respondent; that the plaintiff having now received the benefits of the construction of said road was "estopped" to deny the validity of the contract, which estoppel respondent specially pleaded; that in order to block altogether a sufficient quantity of timber to induce the St. Louis, Iron Mountain & Southern Railroad, the said Pine Hill Lumber Company, Limited, and its aforesaid vendors purchased from the Railroad Lands Company, Limited, more than 16,500 acres of land for which it paid the sum of $41,512.50, and also purchased from the school board ――――― acres of land for which it paid the sum of ―――――; that the said company has no use for said lands, and would not have gone to the expense of purchasing the same but for the purpose of inducing the construction of said railroad (an obligation it assumed under plaintiff's aforesaid deed conveying said timber and as part consideration therefor).

That the desire of the citizens of Farmerville and surrounding country for a railroad into Farmerville was so great that C. H. Jamison, Edward Everett, J. G. Trimble, J. D. Baughman, J. G. Taylor, C. H. Murphy, R. Hass, W. J. Turnage, B. F. Pleasant, O. H. Thompson, B. T. Hopkins, and B. B. Thomas, all being large property holders and citizens of Union Parish, La., among other obligations assumed to secure 500,000,000 feet of merchantable timber consisting of pine, white oak and cypress at 50 cents per 1,000 feet for the said McShane, his associates, successors, and assigns, in order to secure the constructions of the Ruston, Hamburg & Southern Railway or some other standard gauge railroad, into Farmerville and near Marion

and Cecil, and with which obligations the citizens complied.

That the construction of said railroad was and has been of great benefit and advantage to the said plaintiff and his property, and has very much increased the value and sale thereof, and has been of great benefit and advantage to the town of Farmerville and to the towns of Marion and Cecil, and to the other towns along the line of said railroad, and to all that section of Union parish, through which it runs; that prior to the construction of said railroad standing timber could not be sold for more than 50 cents per 1,000 feet, and no demand existed at that price, and plaintiff's timber sold as aforesaid to respondent for lack of transportation to market, and being widely scattered the price fixed was the maximum value thereof at that time; that the construction and operation of said railroad had increased the value and demand for timber, and on this account alone plaintiff seeks to recover the same back from respondent. It further averred that the value and demand for the land without the timber has been largely increased by the construction and operation of said railroad and the other timber on plaintiff's land not covered by said deed to respondent —had likewise been increased in value; that in performing the obligations imposed upon the said McShane and his associates, successors, and assigns, under said deed and deeds, he and they employed a large number of men and incurred many thousand dollars of expense, all of which would be fully shown on the trial of this cause; that he and they bought large quantities of other property they would not have bought but for the conduct of the plaintiff and others of similar character; that plaintiffs having profited by the time, talent, labor, and moneys of respondent and its authors, and having induced it and them to give their time, skill, labor, and expend their money in the

construction of said railroad in acquiring said lands, in incurring liability for the shipment over said line of railroads of the tonnage from said timber in the assessment of same to respondent and its authors and payment by it and them of the taxes thereon for the years 1903, 1904, 1905, and 1906, could not now be heard to question defendant's title, and respondent specially pleaded said estoppel in bar of plaintiff's action.

Further answering it, defendant averred that some time after the completion of the Farmerville & Southern Railway as aforesaid, and more than a year prior to its purchase of the timber described . its petition, it was advised and informed by plaintiffs through respondents' attorney that the contract of sale entered into by them with the said John A. McShane having been pronounced legal and valid by their attorneys Messrs. Clegg & Quintero, the same would not be contested by them, and upon which declaration respondent in a large measure acted in making the purchase of the timber from the Pine Hill Lumber Company, Limited, and which declaration and representation equitably estops plaintiff from contesting said contract and respondent's ownership of the timber in controversy, which estoppel it specially pleaded in bar of plaintiff's demand.

It specially denied that it or its agents or employés had committed any trespass whatever upon the premises of plaintiff. On the contrary, respondent averred that it commenced cutting the said timber by reason of its ownership of the same, and in accordance with its rights and authority derived under said original contract, and the subsequent statement made by plaintiffs; that said injunction was illegally and maliciously obtained to the injury and detriment of respondent, entailing an expense of attorney's fees upon respondent for procuring the dissolution of the said writ of injunction the amount of $250, and damaging respondent

in the further sum of $500 in annoyance, inconvenience, and trouble unnecessarily and illegally caused respondent by the issuance and service of said injunction, and making in the aggregate the sum of $750, as damages sustained by respondent in consequence of said injunction, and for which sum respondent was entitled to judgment in reconvention against plaintiffs.

It prayed that plaintiffs demand be rejected; that respondent's title to the property involved herein be recognized and sustained; that plaintiffs pay all costs of this suit; and that respondent have judgment in reconvention against plaintiffs for the sum of $750 damages, and that the injunction be dissolved. And for all necessary orders and decrees, and for equitable and general relief.

The district court rendered judgment rejecting plaintiff's demands and ordering the injunction sued out be dissolved and set aside, and judgment given in favor of defendant for $100 damages, attorney's fees for dissolving writ, and all costs of suit.

The initial instrument on which defendant bases its rights is as follows:

"This contract and agreement, entered into on this, the 19th day of May, 1902, by and between W. B. Thompson and P. L. McCay of the firm of W. B. Thompson & Co., a resident of the parish and state aforesaid, party of the first part, and John A. McShane, a resident of Omaha, Douglas county, Nebraska, party of the second part, witnesseth: That the party of the first part, being the sole owner of the following described lands situated in the parish of Union, Louisiana, to wit: The lands as per two sheets annexed, which sheets are made part of this contract. It being understood and agreed that such timber shall be left uncut as is necessary for the purpose of farming on the lands mentioned (description omitted), containing 1,820 acres, more or less, has granted, bargained and sold, and does by these presents sell and convey and transfer unto the said second party all of the merchantable white oak, cypress and pine timber growing, standing or being on said land for the price and sum of fifty cents per thousand feet at the stump, payable at the end of each month as the same shall be cut and removed and the certificate of measurements to be furnished at the expense of purchaser.

"That, for the purpose of felling, cutting and removing the said timber, the party of the second part shall have possession of said land, and the right to cut out and construct roads and tramways over, on and across the same, and the right to use the same for the removal of timber he may buy on land adjoining, and beyond that described herein, and to have free ingress for employés, teams and vehicles into, upon and off the same.

"The party of the second part shall cut and remove the timber from the land herein described within ten years from the date hereof, and, upon failure so to do within said time, the said second party shall have the right to prolong the period of performance and preserve the rights vested in him by this sale and agreement, for ten years additionally, by paying to said party of the first part, commencing at the expiration of the first ten years, ten cents per acre per year for each acre from which the timber shall not have been cut and removed, during the prolonged period, which payment when made shall be full compensation for any and all claims or demands of whatsoever nature for the failure of the second party to cut and remove the timber during the first and second periods of time herein granted.

"It is further agreed that whenever the said timber shall have been cut and removed, the party of the first part shall enter into full possession of said land at once whether the time for such removal be expired or not, provided that all right of railroads and of right of way herein granted shall be perpetual, said right of way to be not less than fifty feet wide and may be used for a regular freight and passenger railroad before, during and after the removal of timber and so long as the same is operated as a railroad. As a part of the consideration for the execution of this contract the second party binds and obligates to render for assessment and pay all legal taxes imposed upon the timber purchased from the date of its acquisition.

"It is agreed that in case the Hamburg, Ruston & Southern Railway, or some other standard gauge railway, is not completed through this section within two years from date hereof, this contract shall be null and void. In case of sale, lease, or transfer of said land, said first party agrees to reserve and protect the rights of the second party as the same exists under this contract. All rights acquired by, and privileges granted to, said second party under this sale and contract shall vest in and inure to the benefit of his heirs, successors and assigns.

"Done and signed in the presence of the undersigned witnesses on the day and year above written at New Orleans, Orleans parish, La.

"Attest:  W. B. Thompson.
"A. J. McQuillen.  P. L. McCay.
"C. W. Duncan."

This instrument was followed by successive instruments, extracts from copies of which accompany this opinion for reference.

Opinion.

This case resembles in many particulars that of Union Sawmill Lumber Co. v. Lake Lumber Co., reported in 120 La. 106, 44 South. 1000.

In that case, Lemuel Smedley, the owner of certain lands in Union parish, executed on the 10th of June, 1901, a writing wherein he declared that he, by the same, granted, bargained, and sold to Jackson, as party of the second part, all of the merchantable oak, pine, gum, cypress, and other timber 10 inches and up and stump, growing, standing, or being on said land for the sum and price of 50 cents per 1,000, payable at the end of each month, as the same shall be cut and removed.

Across the face of the instrument was written:

"It is hereby agreed that in case the Hamburg, Ruston & Southern Railway is not completed to Farmerville within two years, and to Marion within three years, this contract is null and void."

In the present case, the plaintiffs Thompson & Co. executed on May 19, 1902, the instrument which we have copied and referred to as being the initial instrument on which defendant bases its rights.

Therein (as will be seen by inspection) Thompson & Co. declared that being the owner of certain described property they thereby "granted, bargained, and sold all the merchantable white oak and pine timber growing, standing, and being on said land for the price and sum of 50 cents per 1,000 feet at the stump, payable at the end of each month as the same shall be cut and removed."

In another clause it was declared that it was "agreed that in case the Hamburg, Ruston & Southern Railway, or some other standard gauge railway, is not completed through this section within two years from date hereof, this contract shall be null and void."

It is not pretended that either the Hamburg, Ruston & Southern Railway, or any other standard gauge railway, was completed within two years from the date of the instrument, but it is contended that a standard gauge railway was completed in that section at a date later. It is urged that the plaintiffs remained silent making no complaint, and not placing McShane or his transferee or assigns in default for the noncompletion of a road within the time designated; that they thereby "waived" any rights which they would have acquired from the noncompletion of a road within the time limit.

McShane, the person named in the instrument as the party of the second part, never signed it nor accepted its provisions. His only connection with it was through an instrument signed by himself on the 19th of January, 1903, wherein he transferred to John Lockwood and H. W. Ragan all and singular his rights, title, and interest in and to the Hamburg, Ruston & Southern Railway Company, including all rights he acquired by said railroad company and all franchises, privileges, and appurtenances thereto and in anywise belonging or appertaining, and all and singular all his right and interest in and to all those certain timber contracts which he had acquired in the parishes of Union and Lincoln, and all his rights, privileges, and immunities which he might possess by virtue of his interest in the said railroad or in the timber contracts acquired by him from the citizens of Farmerville and Marion.

Thompson & Co. were not parties to this contract, and were third parties as to its recitals.

An inspection of the initial instrument will show that it contained no reference to any obligation on the part of McShane to construct or cause to be constructed any railroad to be completed through that quarter, nor did McShane take upon himself or as-

sume the obligations of a purchaser of all the timber on the Thompson land.

None the less John Lockwood, H. W. Ragan, and others claiming to be the transferees and assignees of McShane, executed on the 19th day of June, 1903, an instrument in which they declared that they and each of them jointly and severally accepted the deeds and real rights conveyed by McShane, and assumed all the duties and obligations imposed therein upon the grantees, especially the following:

"The obligation to construct, or cause to be constructed, a standard gauge railway northerly through the parish of Union to a connection with the line of road of the Eldorado and Bastrop Railway Company in Union county, Arkansas, and within the limit of time and upon the course or route specified in said deed; have entered on the construction of said road; and were engaged in the actual construction of said railroad under and in accordance with terms and stipulations of said deeds.

"(2) To pay all taxes legally assessed against said timber and real rights conveyed by said deeds.

"(3) To pay to said vendors, their heirs or assigns fifty cents per thousand for said timber monthly as the same may be cut and removed by them, their heirs or assigns, and within the time specified in said timber deed and

"(4) Generally to do and perform any and all other things provided for in said deeds to be accepted and performed by said grantee and assigns of whatever kind, character, and designation."

Defendant does not claim that McShane ever bound himself to buy and pay for all the timber on the Thompson land, or to construct, or to cause to be constructed, either the Hamburg, Ruston & Southern Railway, or any other standard gauge railway, to be completed through that section within two years from the date of the original instrument. Their averment on that subject is that McShane "negatively" assumed to bring about the "construction of the Hamburg, Ruston & Southern Railway, or some other standard gauge railway, in that section within two years."

That averment is not sustained by the facts. Not only did McShane not assume the obligation of constructing, or causing to be constructed, the building of a road, but he positively refused to enter into the particular contract which his transferees subsequent to their purchase from him entered into, which defendant refers to in its answer.

The evident object of the transferees of McShane and their assignees in making this allegation was to connect and place Thompson & Co. in privity with this last-mentioned contract to take from it the character of an independent original contract created by themselves, and assign to it the character of a derivative obligation thrown upon them under the original instrument which Thompson & Co. had signed, with a view of testing the rights and obligations of parties not under the provisions of article 2038 of the Revised Civil Code, but by those of article 2047. In Union Sawmill Co. v. Lake Lumber Co., 120 La. 106, 44 South. 1000, the district judge said:

"There is nothing in this document (the document signed by Smedley) to show that Jackson, the vendee, ever obligated himself to build the Hamburg, Ruston & Southern Railway as a part of the consideration of the sale by Smedley. The road was not built in the specified time, and, so far as that is concerned, it never has been built, nor was another road built to Farmerville and Marion within the time specified. If the building of the Hamburg, Ruston & Southern Railway was not dependent on the will of Jackson the declaration in the contract which has been quoted should be construed accordingly to article 2038 of the Revised Civil Code. And construed according to the law of that article the contract became void at the end of two years, and neither Jackson nor his assigns had any rights thereafter; but conceding that the building of the Hamburg, Ruston & Southern Railway was a part of the consideration of the sale to Jackson, and that the building of the road was dependent upon his will, the law, then, by which the above condition would be governed, is article 2047. In other words, had the road been built, but not in the specified time—if Smedley had remained silent—he could not be heard to complain. The consideration under such circumstances would be considered as fulfilled."

We fail to find any evidence showing that McShane assumed either "negatively" or posi-

tively any obligation touching the building or construction of a road in that section to be completed within two years of the date of the original instrument. If the transferees of McShane assumed any obligation in reference to that subject it was an obligation originating in themselves, and not an obligation thrown upon them derivatively under a prior obligation of McShane. It was never contemplated that the transferees of McShane should quoad the plaintiff occupy any position other and better than McShane himself would have occupied had he made no transfer under the act. We must deal with defendant's rights precisely as if McShane himself was now before the court. There is certainly no privity between defendant and the plaintiff in respect to anything done by McShane's transferees outside of the exact terms of the original act. There is not privity between the railroad and the plaintiff in respect to any contract made between it and McShane's transferees.

Thompson & Co. could not place the railroad corporation in default in respect to the building of its road, for there were no contractual relations between them. If any one had the right or was under the obligation to place the railroad in default in respect to the completion of the road it was the party with whom the corporation may have made a contract, and not the plaintiff. If they did not enforce their rights against that corporation, they were responsible for it. This is not a suit where the plaintiffs are claiming anything against the railroad, nor the railroad against the plaintiffs.

We understand defendant to contend that the instrument signed by Thompson & Co. to McShane evidenced an open, continuing offer to McShane (or to any one to whom he might transfer his rights), without any limitation as to the time within which the acceptance to the offer should be made; that McShane was not required to commence cutting or re-

moving the timber at any particular time; that he was only called upon to "finish cutting and removing the timber" within 10 years, and even that obligation was not absolute, as he had the right to prolong that time for 10 years more on paying 10 cents for each acre of plaintiff's land, which payment, when made, should be full compensation for any and all claims or demands of whatever nature for the failure of McShane to cut and remove the timber during the first and second period of time granted in the instrument; that the Union sawmill had commenced cutting and removing the timber on plaintiff's land within 10 years of the date of the execution of the act by plaintiffs.

We understand defendant to contend that, though McShane himself may not have accepted the offer made, he had the right under the instrument executed by plaintiff to transfer his right of acceptance to other parties, and that should these parties accept they should be considered quoad the plaintiff, in the same position as if the offer had been made as original parties to the instrument and direct to them. We do not think it was ever contemplated by the plaintiff that their obligations under the instrument should be broadened, modified, varied, or altered by any acts of McShane's transferees from what they were under the instrument which they themselves signed. We think the case is one where it was expressly stipulated (to which stipulation the party or parties claiming derivative rights under the instrument consented—and committed themselves) that on the nonhappening of the particular event mentioned (that is, the noncompletion of the road within the time fixed) the right and obligations of all parties under the instrument should come to an end, ipso facto, and this without reference to any connection of McShane's with the happening or nonhappening of the event. Rev. Civ. Code, art. 2039.

If parties had prior to that time by accept-

ance acquired the "right to cut down trees and remove the same," and had in fact commenced doing so and removing them within two years, that right came to an end by the very fact itself that the time limit had expired without the completion of the road, and if the right of cutting and removing timber had not been exercised up to that time (which it was not), it could not be exercised thereafter. The stipulation on that subject was the controlling stipulation of the whole act; all the other clauses and stipulations of the instrument were held in check and subordinated and governed by it.

We have so far discussed the issues before us upon the assumption that there existed between the parties a valid and binding contract, but such, in our opinion, is not the case. The transferees of McShane claiming rights have subjected themselves to no obligations other than those which, as to their existence, scope, and duration, rest upon their own will. There is no mutuality under the alleged agreement. The transferees of McShane have not given or agreed to give any serious consideration for the rights which they assert they have acquired.

The judgment appealed from is erroneous, and must be reversed.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, set aside, annulled, avoided, and reversed, and it is now ordered and decreed that there be judgment in favor of the plaintiffs and against the defendants, adjudging and declaring the agreement on which the defendants base the rights asserted by them herein to be null, void, and of no effect, and the said asserted rights to be neither just nor well founded. It is further ordered, adjudged, and decreed that the injunction which issued herein at the instance of the plaintiffs be, and the same is hereby, perpetuated.