PROVOSTY, J.
By a contract dated October 14, 1906, and recorded October 22, 1906, J. N. Thornhill sold to plaintiff a certain tract of land, including the timber thereon; and by another contract dated September 24, 1906, and recorded on the same day, he sold to plaintiff all the timber upon another tract. He had previously entered into the following agreement with reference to the same timber:
“Buckeye, P. O., La., August 16th, 1905.
“State of Louisiana, Parish of Rapides.
“Know all men by these presents and this instrument that I, J. Newton Thornhill, of the first part, a resident of Buckeye, P. O., Rapi-des parish, Louisiana, agree and covenant with J. N. Graves and J. L. Head, parties of the second part and residents of Buckeye P. O., Louisiana, as follows, to-wit:
“Party of the first part bargains and sells to parties of the second part, their heirs and assigns, all merchantable pine timber measuring (10) ten inches in diameter and over, on the following tract of land, to-wit:
“E. % N. E. %, E. y2 of 8. E. % of Sec. 6 T. S. 4 N. 3 East La. Mer.
“This for and in consideration of one dollar (83.00) per thousand feet, which sum is to be paid in cash or vendor’s option of equivalent value by parties of the second part to parties of the first part in the following order: All timber cut, hauled and scaled m a given month up to and including the last day of the month, shall be payable on the 15th day of the succeeding month, this giving parties of the second part 15 days grace on each monthly settlement, and further that the agreement shall be in force from date until (10) ten years after date.
“This acknowledges the receipt of one dollar by party of the first part as a part payment'in advance.
“[Signed] Newton Thornhill.
“J. N. Graves.
“J. L. Head.
“Witness:
“I. D. Reynolds.
“S. C. Greer.”
This agreement was recorded September 18, 1905.
Graves and Head, the parties with whom this agreement was made, purchased a sawmill already on the land, and began cutting and sawing the timber. They cut and sawed 125,000 feet for which they paid Thorn-hill at the agreed price of $1 per thousand. In November or December, 1905, they left the place, and went to the adjoining parish *853 of Avoyelles. They took away the whistle and belting of the sawmill, and shortly aft-erwards the saw. In March, 1906, they sold the sawmill to the International Lumber Company, and transferred to said company all their right, title, and interest under the said agreement; and on October 11, 1906, this company made a similar sale and transfer to the defendant. These transfers were recorded the day following their respective dates.
When the defendant Hotard attempted to cut the timber in accordance with this agreement, the plaintiff by the present suit enjoined him from doing so.
Plaintiff contends that the foregoing agreement with Graves and Head does not evidence a binding contract, and that consequently Thornhill was at liberty to disregard it and sell the timber to some one else.
In support of this, it is said that there is no certainty in the thing sold, because only the merchantable timber is sold, and no rule is furnished by which to determine which part'of the timber is not merchantable; and evidence is offered to the effect that experts will disagree with regard to the merchantability of any particular timber.
In answer to this, we will say that the word “merchantable” is commonly used in sales in describing the grade or quality of the thing sold, and that no one has heretofore thought of suggesting that the object sold was thereby made so uncertain as to invalidate the contract. There can be no question that experts can determine with approximate certainty the merchantability of timber — they are doing it every day — and the parties to this contract must be understood to have intended that such approximate certainty should answer the purpose of their ■contract. It must be assumed that they thought that there would not likely be any disagreement if the contract1 were carried out in á spirit of fairness on both sides, and that in the contrary case the courts could decide.
In this connection, the present case differs, toto cselo from that of Werner Sawmill Co. v. O’Shee, 111 La. 817, 35 South. 919, in which .the agreement whs that the parties themselves — in other words, not the courts —should name the experts, and one of them refused to do so, thereby rendering the contract impossible of execution.
It is next argued that there is uncertainty also as to the price, because the object sold is not all the merchantable timber upon the land, but only that part of it which Graves and Head or their assigns may cut, without there being any obligation on their part to cut any.
We think there is ah obligation on the part of Graves and Head to cut, haul, and scale the timber. After having signed an instrument by which they bought timber to be paid for when cut, hauled, and scaled, they could not be heard to deny that they were under obligation to cut, haul, and scale the timber. The contract manifestly contemplated that the timber should be cut, hauled, and scaled by them; and, by signing it, they assumed that obligation.
The broad distinction between such a case and those of Union Sawmill Co. v. Lake, 120 La. 106, 44 South. 1000, and Thompson v. Union Sawmill Co., 121 La. 318, 46 South. 341, is that in the latter cases the contract, for one thing, was not signed by the vendee, and, for another, became void for nonaccom-plishment of one of its conditions.
The price is said to be uncertain for the further reason that the stipulation is that it is to be paid “in cash or vendor’s option of equivalent value.”
Of' course, if the clause “or vendor’s option of equivalent value” were given the meaning that the vendor was to have the right to demand of the vendee something other than money, there would be fatal uncertain *855 ty in the price. But that clause, as we read it, means nothing more than that the payment should be in money, unless the vendor chose to accept something else of equivalent value if offered him. As thus read, the clause is mere brutum fulmen and surplus-age. The clause could not possibly be accepted as written, because as written it would mean that the vendor was to have the right to exact from Graves and Head in payment of the timber any and whatever they might own of equivalent value to the timber; for instance, to put an extreme case, that he might thus demand the very shirts from their backs.
The circumstance that specific performance of the contract could not be enforced — if such were in fact the case — would not deprive the contract of its obligatory character. It is more the exception than the rule when specific performance of contracts can be enforced.
Nor is the circumstance that in case the trees perished the loss would fall upon Thornhill a test of the existence vel non of a contract, .and of the contract being a sale. Article 2458, Rev. Oiv. Code, provides for just that kind of a sale. It reads:
“When goods, produce, or other objects, are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller, until they be weighed¡ counted or measured; but the buyer may require either the delivery of them or damages, if there be any, in case of non-execution of the contract.”
The principle embodied in this article is equally applicable to a sale of trees which are not to pass into ownership of vendee until they have been cut down.
We say nothing of the lease by Thornhill to Graves and Head, as it was recorded after the sale to plaintiff, and is not insisted on in defendants’ brief.
The point is not discussed in the briefs whether the contract, conceding it to have been valid and to have been a sale, had the effect of transferring the ownership of the trees, or, if not, whether it had the effect of creating a right upon them such as would follow them into the hands of any third person to whom Thornhill might sell them. Waiving the point whether a sale by weight, tale, or measure conveys the ownership before the thing sold has been weighed, counted, or measured, we think that such a sale as the one in question in this case has all the effects of a promise of sale, and that a promise of sale of real estate follows the thing into the hands of third persons. By recent statutes, trees continue to be real estate after they are sold.
The services of counsel having been rendered exclusively upon the trial of the case on the merits, defendant is not entitled to counsel fees for dissolving the injunction. The other damages could only have been very small, and the claim for them is not seriously pressed.
It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there be judgment in favor of defendants and against plaintiff dismissing plaintiff’s suit, and setting aside the injunction herein, and that plaintiff pay all costs.