(63 South. 875.)

No. 19,640.

HARANG et al. v. RAGAN.

(Dec. 1, 1913. Rehearing Denied Jan. 5, 1914.)

*(Syllabus by the Court.)*

1. MORTGAGES (§ 37*)—NATURE OF TRANSACTION—EVIDENCE.

An authentic act of sale of a plantation for a certain price, as between the parties and their heirs, cannot be shown to be an antichresis or pledge, except by a counter letter or answers to interrogatories on facts and articles.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 97–107; Dec. Dig. § 37.*]

2. MORTGAGES (§ 40*)—ANTICHRESIS—WHAT CONSTITUTES.

A so-called counter letter written by the purchaser a year and a half after the sale, in which he proposed to transfer the plantation, with warranty of title, to his former vendors, on their payment to him of all the debts due by them, with interest as stipulated, bears none of the earmarks of an antichresis, which requires the creditor to account for fruits and revenues, and to apply them first to the payment of interest, and thereafter to the payment of the principal.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 114; Dec. Dig. § 40.*]

3. CONTRACTS (§ 10*)—MUTUALITY.

A written instrument signed by the record owner, proposing to transfer to his vendors a certain plantation on certain conditions, becomes a nudum pactum, if not signed or accepted in writing by them within a reasonable time.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

*(Additional Syllabus by Editorial Staff.)*

4. MORTGAGES (§ 1*)—"ANTICHRESIS."

The "antichresis" is an antiquated contract, requiring the creditor to take possession of and administer the property, to pay the taxes, and to keep up the improvements, and has been resorted to in this state in but a few instances.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1, 51; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, p. 411.]

Appeal from Twentieth Judicial District Court, Parish of Lafourche; J. A. Coignet, Judge ad hoc.

Action by Clemence M. Harang and others against William H. Ragan, Jr. From a judgment of dismissal, plaintiffs appeal. Affirmed.

Foster, Milling, Brian & Saal, of Franklin, for appellants. Howell & Caillouet and Beattie & Beattie, all of Thibodaux, for appellee.

LAND, J. This suit was dismissed on an exception of no cause of action, and the plaintiffs have appealed.

The record consists of a voluminous peti-

tion, with a number of documents thereto annexed.

Plaintiffs sue as the heirs of Theophile Harang, Sr., who died in 1885, and of his wife, Zoemie Labadie, who died in 1907, to be recognized as owners in indivision of a tract of land known as the "Banana Grove Plantation," measuring 30 arpents front on Bayou Lafourche. The titles to this tract of land, as alleged in the petition, may be briefly stated as follows:

The Banana Grove Plantation originally formed part of the Harang Plantation, which belonged to Octave Harang, Pierre Desalles, Theophile Harang, Sr., and Mrs. Zoemie Labadie, his wife. By private act of partition of date May 5, 1876, Harang, Sr., and wife acquired the upper part of said plantation measuring 45 arpents front on Bayou Lafourche. On the next day, by notarial act, the four former co-owners conveyed the Harang Plantation to Jules A. Blanc "in settlement of certain debts which he claimed to be due to him by said parties."

On January 29, 1880, Jules A. Blanc, by notarial act, which purported to be a sale, conveyed the said upper part of the Harang Plantation to Theophile Harang, Jr., for the price of $7,900, represented by two notes secured by vendor's privilege and special mortgage on the property. On October 25, 1881, Harang, Jr., by notarial act, sold the same property to Wm. H. Ragan for the price of $20,000, of which $4,544.39 was acknowledged to have been paid in cash, and the balance, $15,455.61, by the assumption of special mortgages and taxes on the property. Harang, Sr., and wife intervened, and consented to this act of sale on certain conditions, at the same time declaring their joint ownership of the property conveyed.

On May 2, 1882, William H. Ragan, by notarial act, sold and conveyed the upper portion 15 arpents front of the same tract to Trasimond Foret for the price of $8,025, recited to have been paid in cash and notes. Subsequently Harang, Sr., and wife renounced in favor of the purchaser all their rights, title, and interest in the property.

On April 24, 1883, William H. Ragan signed an instrument in words and figures as follows, to wit:

"Parish of Lafourche, April 24, 1883.

"This is to certify that I, by these presents, bind and obligate myself to transfer and set over with all legal warranties to and unto Mrs. Theophile Harang, her heirs and assigns, or to and unto Theophile Harang, her husband and legal representatives, the property known as 'Banana Grove Plantation,' measuring thirty arpents, more or less, by a depth of forty arpents, and situated on the left bank of Bayou Lafourche at about thirty-three miles from Thibodaux.

"This transfer I bind and obligate myself, my heirs or representatives, to make as soon as all the obligations due me, with such interest as may have been stipulated on the same, shall have been paid and canceled by said parties, their heirs or representatives; I holding said property in my name only as a guarantee for the reimbursement of the amounts due me, with the interest."

This instrument was not recorded until September 21, 1891. William H. Ragan died in the year 1900, and was succeded by his son and only heir, William H. Ragan, Jr., the defendant herein. This suit was instituted in March, 1910.

Defendant excepted to the petition, on the ground that the plaintiffs had not tendered performance on their part, that the petition did not set forth any right or cause of action, and that the action was barred by the prescription of 1, 2, 3, 4, 5, 10, and 30 years.

The trial judge sustained the exception of no cause of action, and overruled the other exceptions.

Defendant, in his answer to the appeal, prays the court to pass on his exception of want of tender and of prescription.

Plaintiff's case rests on the proposition that the sale from Harang, Jr., to Ragan, Jr., of date October 25, 1881, read in the light of the instrument of April 24, 1883, constituted "a

pledge or antichresis of the said Banana Grove Plantation."

[1] The sale of October 25, 1881, was by authentic act, and shows on its face a conveyance of the property for the price of $20,000, paid part in cash and the balance by an assumpsit of special mortgages on the property. Harang, Sr., and wife joined in this act of sale, and the only condition or reservation therein was one in favor of Mrs. Harang, who was to receive a certain amount in the event she won a certain suit against J. A. Blanc, involving the validity of his title to Mrs. Harang's interest in the premises. There is not a clause or line in the act of sale that suggests even remotely that it was intended as a security or pledge for debts due by Harang and wife to Ragan, Sr. Subsequently Ragan sold a portion of the tract for $8,025, and received the price. Later, at the request of the purchaser, Harang, Sr., and wife renounced whatever interests they had in the premises.

An authentic act makes full proof of the agreement contained in it against the contracting parties and their heirs or assigns. Civil Code, art. 2236. Hence it is manifest that Harang, Sr., and his wife, and their heirs, are concluded from asserting that the sale made to Ragan was not a sale but a pledge or antichresis, except by a counter letter, or by answers to interrogatories on facts and articles propounded to the defendant.

[2] The learned counsel for the plaintiffs contend that the instrument of date April 24, 1883, is a counter letter. It is evidently not such, as it does not refer to the sale of 1881, or acknowledge in general terms that the signer had no title to the property.

The first paragraph assumes that W. H. Ragan had a title which he proposed "to transfer and set over with all legal warranties" to the Harangs.

The second paragraph binds and obligates W. H. Ragan to make "this transfer" as soon as all the obligations, including interests, due him by the Harangs should have been fully paid and canceled; Ragan holding the property in his name only as a guarantee for the reimbursement of the amounts due him, with the interest. This last clause is couched in the present tense as a part of the proposition. The instrument refers to no previous contract, agreement, or understanding between the parties, and on its face is an independent proposition.

[3] The instrument was never signed by the Harangs, nor accepted by them in writing. A unilateral proposal to sell, not accepted by the other party, is void for want of mutuality. Blackshear v. Hood, 120 La. 969, 45 South. 957; Union Sawmill v. Lake Lumber Co., 120 La. 106, 44 South. 1000; Thompson v. Union Sawmill, 121 La. 339, 46 South. 341; Riley v. Union Sawmill, 122 La. 863, 880, 48 South. 304.

Whatever the instrument may be, it certainly does not import a present, or pre-existing, pledge of immovable property, or antichresis, as it is denominated in the civil law. Article 3176 of the Civil Code reads as follows:

"The antichresis shall be reduced to writing.
"The creditor acquires by this contract the right of reaping the fruits or other revenues of the immovables to him given in pledge, on condition of deducting annually their proceeds from the interest, if any be due him, and afterwards from the principal of the debt."

[4] The antichresis is an antiquated contract, requiring the creditor to take possession of and administer the property, to pay the taxes, and to keep up the improvements, and has been resorted to in this state in but a few instances.

If, in this case, there had been such a contract, the so-called counter letter would have been an absurdity. If Ragan was accountable for the fruits and revenues of the property.

how could he demand interest in the debts due by the Harangs, or even the principal? and why did not they, in the year 1883, when notified of such demand, remind Ragan that the debts and interest thereon were payable out of the rents and revenues of the plantation?

We are convinced that the titles before us do not show any contract of pledge or antichresis as contended for by the plaintiffs.

Judgment affirmed.