Campbell vs. Lambert & Co.

## No. 8045.
### W. S. CAMPBELL VS. A. LAMBERT & CO.

An agreement by which one party engages to deliver to the other such quantities of coal as the latter may require during the year "to the extent of sixty thousand barrels with privileges of twenty thousand more," at a stipulated price, but containing no obligation on the part of the latter to take or pay for any stipulated quantity, is a *nudum pactum*, from the performance of which the promisor may, at any time, withdraw.

One promise may be a good consideration for another promise, but there must be a mutuality of engagement.

APPEAL from the Fifth District Court for the Parish of Orleans, *Rogers, J.*

*Singleton, Browne & Choate* for Plaintiff and Appellant.

*Chas. S. Rice* and *T. Gilmore & Sons* for Defendants and Appellees.

The opinion of the Court was delivered by

FENNER, J. Plaintiff and defendants entered into the following agreement:

"ARTICLES OF AGREEMENT

"Entered into this first day of January, 1879, eighteen hundred and seventy-nine, between A. Lambert & Co., of the one part, and W. S. Campbell of the other part, witnesseth that the said A. Lambert & Co., for, and on the behalf of themselves, and the said W. S. Campbell of New Orleans, for himself, have mutually agreed with each other, as follows:

That the said party of the first part shall furnish and deliver to the said W. S. Campbell, of New Orleans, such quantities of Pittsburg coal as may be required by the party of the second part, during one year, from the first of January, 1879, to the first of January, 1880, to the extent of sixty thousand barrels, with the privilege of twenty thousand barrels or more, to be delivered with dispatch, in such quantities and at such places within the city limits as may be designated by the party of the second part. That the party of the first part shall receive for each and every barrel of Pittsburg coal, thirty-eight cents per barrel, payable at the end of each month.

"This done and signed in duplicate and good faith, this 31st day of December, 1878.

(Signed)        A. LAMBERT & Co.,
            W. S. CAMPBELL."

A striking similiarty will be observed between this document and the one sued on in the case of W. S. Campbell vs. J. P. H. Short, No. 8069 of the docket, recently decided and not yet reported.

It is further observable that the party who there resisted, here demands, enforcement of the letter of his bond.

In the present case, from January to June, the price of coal was such that defendants could have supplied coal under the agreement without loss. During this period, plaintiff ordered of them less than 1500 barrels. From June 1st, coal began to advance, and, on 1st September, 1879, a disastrous storm occasioned the sinking of a large portion of the coal-fleet lying at this port. This caused a large advance of prices and a coresponding increase in the size of plaintiff's orders on defendants. The latter, however, struggled to comply with their agreement, actually delivering during the year, a total of 33,345 barrels. At last, in November, plaintiff having ordered the delivery of 500 barrels per day, for twelve days, at his own coal yard, defendants refused to comply. Plaintiff then claimed delivery of the balance of the entire 80,000 barrels mentioned in the agreement, and, on refusal by defendants, brought the present suit for $28,926 10 (besides other items) being for sixty-two cents per barrel on 46,655 barrels undelivered, that being the difference between the contract price and the price at date of demand. Plaintiff claims that, under the unambiguous letter of his contract, he was entitled to demand, and defendants were bound to deliver, the entire amount of coal mentioned in the contract, whenever he chose to make the demand. Defendants, on the contrary, say that, the plaintiff was a retail dealer in coal, supplying consumers, and that the true meaning and intent of the contract were that plaintiff's orders should only be for the purpose of supplying his consuming customers and to the extent necessary for that purpose.

It is not necessary to resort to construction, though there is not wanting evidence, in the record, to sustain the view of defendants.

But, on plaintiff's own theory, it is manifest that the agreement is a *nudum pactum*. We scan its provisions in vain to find the imposition, on Campbell, of any obligation to take or pay for any amount of coal whatever. He undertakes nothing except to pay, at the end of each month, for such coal as he may have chosen to order. One promise may be a good consideration for another promise, but not "unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement." 1 Parson's Cont. p. 448.

Thus it has been held that a written agreement to give A the refusal of the lease of a farm, at stipulated rent, with no agreement on the part of A to take it, and no other consideration, is void. Burnet vs. Bisco, 4 Johns, 235.

So, a contract in writing to convey lands, at a fixed price, and within a stated time, where the other party did not bind himself to take and nothing was paid or agreed to be paid by him, was held void. Bean vs. Burbank, 16 Me. 458.

Again, where the purchaser at an executive sale, gave the defendant a written promise to reconvey upon the payment of a specified sum by a day named, but the defendant did not bind himself to make such payment, the promise was held to be without consideration. Mers vs. Franklin, 68 Mo. 127.

The following case is yet more exactly in point, viz: it was held that a written agreement under which one party was to deliver to the other prairie hay " not *to exceed* two hundred tons," payment to be made on delivery of designated installments, did not confer upon the latter party a right to enforce delivery to the limit mentioned, was, therefore without complete mutuality, and left it optional with each party to avoid the agreement, on giving notice to the other, at any period during the time of delivery. Houston vs. Mitchell, 38 Texas, 85.

If the condition upon which defendants' promise was to take effect had been the doing of something involving labor or other value by Campbell, and upon the faith of said promise and before its revocation, Campbell had done the thing, different principles would apply, not necessary to specify here. But the foregoing cases sufficiently show that the mere exercise of an option to exact the performance of a promise, does not alter the situation of the parties and does not prevent the promissor from exercising his right of refusal.

The authorities quoted are sound and applicable to our law.

On these grounds we hold that defendants were not bound in law to execute the naked promise contained in their agreement, but had the

right, at any time, to refuse to proceed in execution thereof, and for such refusal, are not responsible in damages to plaintiff.

Defendants have, at considerable cost to themselves, striven to comply with an unconscionable bargain by which they were not legally bound and we think they are entitled to relief under their prayer for amendment of the judgment.

The only damages claimed outside of those for non-delivery, amount to five hundred and ninety-five dollars and fifteen cents, and we shall reduce the judgment to that amount.

The objection that defendants' plea in compensation amounts to a judicial confession, has no force under the circumstances of this case which correspond with those presented in the following case and fall under its authority. Durham vs. Williams, 32 A., 962.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by striking therefrom the words "two thousand three hundred and twenty-five dollars and eighty-five cents," and inserting, in lieu thereof, the words "five hundred and ninety-five dollars and fifteen cents," and that, as thus amended, the judgment be affirmed; plaintiff and appellant to pay costs of this appeal.

Rehearing refused.