BREAUX, C. J.
Plaintiff enjoined the defendant from cutting down trees on his land.
The defendant’s contention is that he cut down in accordance with an agreement, part of which we insert here as it is of importance in deciding the issues, viz.:
F. C. Blackshear, on the one hand, and Hood & Crawford Lumber Company, on the other, entered into an agreement whereby *967 the former leased to the latter a site on which the defendant constructed a sawmill at the Tarver Spring, on plaintiff’s land. It was stipulated that the purpose of the lease was to enable the company to carry on a sawmill business for a term of 10 years. One dollar was the considetation, the receipt of which was acknowledged, although not paid.
In addition to the foregoing, it was agreed between them that to the latter, the firm of Hood & Crawford, permission was granted to remove the sawmill at any time within 10 years. It was further agreed between these parties that the latter — that is, Hood & Crawford Company — were to have free permission to cut all sawmill timber on the land owned by plaintiff within one mile of the mill site. The company bound itself to keep a correct record of all timber cut and used, and to pay to the owner the sum of 75 cents per 1,000 feet as fast as cut and used.
We will state that Crawford withdrew from the firm a short time after the agreement had been signed, and thereafter the agreement was considered as exclusively between plaintiff and the defendant, Hood.
Plaintiff in his petition attacked this instrument on the ground that it is a license to cut timber, revocable at will; furthermore, that the agreement made with the defendant is a nudum pactum, as defendant was not bound to do anything; and, lastly, that the defendant had broken the conditions of the agreement.
The defendant insists that the agreement was a commutative contract, followed by voluntary execution on the part of each of the contracting parties, and that plaintiff is bound by conduct and by having received benefits under the agreement, and, lastly, that the lessor cannot forfeit the lease as it contained no forfeiture clause.
The permission to defendant was to occupy a sufficient space of the land to cut down trees and haul them away.
We will take up for decision in the first place the question growing out of the license feature of the agreement.
The permission to cut timber was the expressed object in this agreement. The plaintiff invoked the clause as being a license to cut, as expressed in the agreement, and not a commutative contract, not a reciprocal obligation, as contended for by the defendant.
In our opinion, license, as relates to immovable property, is the authority given to enter upon the land to work thereon and to take away whatever is immovable by destination thereon; and this without stipulation as to time. The possession remains in the owner. The licensee has no further interest than to do that which the license authorizes.
We have seen that there was no term. It could not continue indefinitely. It left authority in the owner to put an end to the permission.
We briefly state again that the.following are the terms of the lease on that point: “Permission to cut all sawmill timber on the land owned by plaintiff and to haul it away.”
The permission granted here falls within the definition given of licenses. We will state that we have considered the agreement from the point of view of the definitions, and have found that the agreement falls within these definitions.
In reference to the contention, asserted by plaintiff and denied by defendant, that the agreement is a nudum pactum, in passing upon the question we considered the first part of the written instrument — that relating to the site upon which the sawmill was constructed. We consider this part as distinct and separate from that part of the agreement relating to cutting timber on the land. The former relates exclusively to the land, and the latter to the trees.
As to the first part of the instrument, the expressed condition was $1, which was not paid. Here that part is at an end. Taking up the remainder of the agreement, we find *969 that it related, as just stated above, exclusively to the cutting down of the trees.
The agreement is a nullity. It did not confer a right on the defendant, for the defendant did not .bind himself to cut any number of trees at all. Performance under the terms of the agreement was left entirely to the will of the defendant. The result was that no price could be collected unless the defendant chose to cut down trees. It was left to him alone to decide when he would begin.
He has not asked the court for time within which to comply with his agreement, and, if he had, such are its terms that the court could not add to the agreement the condition it did not include. There was a want of complete mutuality.
A similar question arose in the case of Campbell v. Lambert & Co., 36 La. Ann. 37, 51 Am. Rep. 1, in which the court in substance held that an agreement in which one of the parties to it was bound and the other was not is a nudum pactum; that a potesta-tive condition on the part of the debtor vitiates the agreement.
In another decision the thing in controversy was trees, and for that reason the issues decided have every appearance of applying to the issues here, in so far as relates to the potestative condition growing out of the fact that there was no mutuality of obligation, in that one of the parties promised to do or to give, while the other was not in the least bound. Union Sawmill Co. v. Lake Lumber Co., 120 La. 106, 44 South. 1000.
This court said, in McDonough v. Zacherie, 3 La. 318, to wit:
“The condition was at once suspensive and potestative; suspensive because the obligation did not take effect until the event happened, and potestative because the execution of the agreement depended on an event in the power of one of the parties to the contract.”
As here, it was in'the power of the defendant to perform the obligation whenever he pleased, and not before. From defendant’s point of view, plaintiff would be tied and he would be loose. But, if the agreement is not null on the- foregoing stated grounds, the facts are such that the plaintiff had the right to dissolve it because the defendant had broken its conditions.
At this point the contention of the defendant is that plaintiff cannot invoke the broken conditions of the contract, because he was not placed in mora.
That contention is not sustained by the weight of the testimony. The plaintiff and two other witnesses testified that defendant, about 2% years before the present suit was' brought by plaintiff, was notified not to cut other trees on the land. The defendant at that time stopped, and in answer to notice received from plaintiff informed plaintiff of his intention to stop the work of cutting down the trees.
The defendant admits that he received a letter from plaintiff, as testified to by plaintiff, but denies that his reply was as stated by witnesses for plaintiff. He sought to give to it a meaning other than that testified to by witnesses.
The facts and circumstances do not bear out that position of the defendant, and his testimony is not corroborated. He said he would quit, and he did for a time'; but in the year 1907 he returned to the work of cutting down trees.
The return has the appearance of an afterthought, conceived after he had abandoned the work, and inspired by the increase in the price of timber, which gave rise, doubtless, to the belief that there remained a right under the asserted contract.
The defendant, after he had stopped working on plaintiff’s land, said that .it was not possible to return and cut down trees thereon, unless in accordance with another agreement, if plaintiff chose to make one.
The defendant, at one time after he had left the land, was associated in business with others who were anxious to cut down trees *971 on plaintiff's land. It was then that defendant said that there was necessity for another agreement.
One of these interested parties was Charles A. Hudson, who became the lessee of defendant’s sawmill, and interested in cutting down trees not too far from the mill. In negotiating with defendant, he was'informed by defendant that these trees could not be taken, because of some defect in the contract.
Now, as to default: Plaintiff did place the defendant in default. Furthermore, the defendant acquiesced, and in consequence of the acquiescence the authority was no longer left in the defendant to perform his part of the obligation. Johnson v. Levy, 118 La. 451, 43 South. 46, 9 L. R. A. (N. S.) 1020.
The defendant had failed to perform his -part, and after default the failure could be urged against him as a ground to dissolve the asserted contract.
The failure consisted in that he was to render an account of the trees cut down. This he failed to do, or rendered such an account as cannot be considered as being the account intended by the terms of the contract. Defendant failed to timely pay the price. The contract provided for payment as fast as “he cut and used the trees.”
In our view, the plaintiff had the right to have the contract dissolved because of nonperformance of the conditions on the part of the defendant.
Upon these grounds we have concluded to affirm the judgment.
For reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from is hereby affirmed.