Statement of the Case.
NICHOLLS, J.
Plaintiff alleges that on or about the 11th day of November, 1899, he entered into a written agreement with J. M. & V. M. Davis, residents of Jackson parish, La., in regard to the sale of all of the pine timber 10 inches in diameter and greater at the stump, growing,, standing, and being on the following described land, to wit: N. W. % of S. E. Vi, E. % of S. W. %, S. W. 14 of S. W. %, section 13, and N. W. % of N. W. Y, section 24, township 17 N., R. 5 W., La. Mer., situated in Lincoln parish, La., and right of way for railroads, tram-roads, and wagon roads over said land, all of which and the terms and conditions of said agreement will more fully appear from a certified copy of said agreement hereto annexed and made a part hereof to show rem ipsam and form basis of this attack.
Petitioner alleged that said written agreement is illegal, null, and void, and should be set aside and canceled on the records of Lincoln parish, La., for the following reasons:
(1) There is no legal or valid consideration.
(2) There is no mutuality of obligation, and said agreement is a nudum pdctum.
(3) It contains and is based on a potesta-tive condition entirely dependent on the will of J. M. & V. M. Davis or of their successors, heirs, or assigns.
(4) That in said written agreement petitioner purports to sell unto J. M. & V. M. Davis, and their successors, heirs, and assigns, all of the pine timber 10 inches and greater in diameter situated on said land, and right of way for railroads, tramroads, and wagon roads over said land, for the price and sum of $1, which is a vile and insignificant price, and is on its face, a fraud, and can form no valid consideration for the sale of said timber.
(B) That further on in said agreement it provides that J. M. & Y. M. Davis, or their successors, heirs, and assigns, shall pay unto your petitioner the price of 50 cents per 1,000 feet, board measure, as cut for said timber, which is a vile price and less than one-fourth of the value of said timber, but do not bind or obligate themselves to ever cut same.
(6) That there has been no acceptance of said purported sale or offer to sell on the part of J. M. & Y. M. Davis, or their sue- *1049 cessors, heirs, or assigns, so as to put said timber at their risk, and it is left optional with them whether or not they ever accept it, and that such an agreement is terminable at the will of any of the parties thereto.
(7) That there is no certain or fixed price.
(S) That said agreement is a fraudulent attempt to take advantage of the ignorance and inexperience of your petitioner, in that it is attempted to force him to hold $3,000 worth of timber for an indefinite length of time at his own risk, without any legal or valid consideration, or any consideration whatever therefor. Your petitioner specially alleges that said agreement is iniquitous and unconscionable, and contrary to public policy and good morals.
Petitioner alleges in the alternative that, if the court should not annul and set aside said agreement for any of the above reasons, then, and in that event, said agreement is null and void for lesion beyond moiety, as the timber described in said agreement was and is well worth the sum of $3 per 1,000 feet at the stump, and that the entire lot of said timber is worth the sum of $3,000.
That the firm of Davis Bros. Lumber Company, Limited, a commercial corporation domiciled and doing business at Ansley, Jackson parish, La., with J. M. Davis as president, are claiming to own said timber under and by virtue of a sale by J. M. & V. M. Davis to them, and are with said J. M. and V. M. Davis necessary parties to this suit.
That J. M. & V. M. Davis paid to him the sums of $1 and $100 mentioned in said agreement, and that your petitioner has, through his attorney, J. E. Reynolds, on July 23, 1907, made a legal tender of $101 aggregate amount of said $1 and $100, to Davis Lumber Company, Limited, by making said tender to J. M. Davis, president of said company, at its domicile, in the presence of two witnesses, and demanded a rescission of said agreement, which tender and rescission was refused.
That said illegal agreement has been recorded in Book Q of Conveyances in and for Lincoln parish, La., on page 261, and that said recorded agreement casts a shadow upon your petitioner’s title to said timber, and prevents him from selling same, and that he is entitled to have said agreement rescinded and .set aside and canceled on the records.
Petitioner alleges, in the alternative, that if the court should not hold said agreement to be null and void, and should not rescind same for any of the above reasons, then and in that event he alleges that said agreement is a mere pollicitation or agreement to sell, and that said J. M. & V. M. Davis paid to your petitioner the sum of $1 and $100 as earnest money, and that petitioner is at liberty to recede from said agreement by returning to said J. M. & V. M. Davis or their successors, Davis Bros. Lumber Company, Limited, double the amount so paid to him. He alleges that he has made on July 23, 1907, a legal tender to Davis Bros. Lumber Company, Limited, through his attorney, J. E. Reynolds, by making said tender to J. M. Davis, president of said company, at its domicile, in the presence of two witnesses, of the sum of $402, and demanded the rescission of said agreement, which tender and demand were refused.
In view of the premises, petitioner prayed for service and citation hereof and according to law upon Davis Bros. Lumber Company, Limited, and upon J. M. Davis, and that petitioner have final judgment against Davis Bros. Lumber Company, Limited, and J. M. & Y. M. Davis, decreeing that the agreement, a certified copy of which he annexed and made a part hereof, and attached, be annulled, rescinded, and set aside and canceled on the records of Lincoln parish, La., for the reasons first alleged, and that plaintiff pay to defendant the sum of $101.
Petitioner prayed, in the alternative, that, if the court should not annul and rescind *1051 said agreement for any of said reasons, then he prayed that said agreement be annulled, rescinded, and set aside for lesion beyond moiety.
I-Ie further prayed, in the alternative, that if the court should not hold said agreement to be null and void, and should not rescind same for any of the above and foregoing reasons, then and in that event that said agreement be decreed to be in the nature of a pollicitation or agreement to sell, with a giving of earnest, and that same be rescinded, annulled, set aside, and canceled, and that plaintiff pay to the defendant the sum of $202 and prayed for costs, all orders and decrees necessary, and for general relief.
On the 30th of August, 1907, the Davis ■Bros. Lumber Company and V. M. Davis appeared, declaring that John M. Davis, a resident of Arkansas, was a necessary party to the suit; that he and V. M. Davis constituted the firm or partnership which purchased the timber in controversy; that the J. M. Davis, on whom service has been made under the prayer of plaintiff’s petition, was not then and never had been a member of the partnership or firm of J. M. & V. M. Davis, and was no party to said timber purchase. They prayed that plaintiff be ordered to make John M1. Davis a party to •the suit.
The plaintiff filed an amended and supplemental petition by alleging that J. M. Davis, of the firm of J. M. & V. M. Davis, was a resident of Arkansas, instead of Jackson parish. Reiterating the allegations and prayers of the original petition, except in so far as might be changed by the amended and supplemental petition, he alleged that it was necessary that a curator ad hoc be appointed to represent him in the suit. He prayed that a curator ad hoc be appointed to represent the said John M. Davis in the suit, that citation be made upon the Davis Bros. Lumber Company, and that there be judgment in his favor as prayed for in the original petition.
The defendants Davis Bros. Lumber Company, Limited, John M. Davis, and Y. M. Davis appeared to plead, and pleaded the prescription of four years in bar of plaintiff’s action to annul the contract. They further alleged that, after eliminating the action of nullity for lesion beyond moiety against which the prescription of four years was pleaded, plaintiff’s petition disclosed no cause of action. They prayed that their pleas of prescription and their exception of no cause of action be sustained, and the suit be dismissed.
The defendants answered under reservation of their exceptions and pleas of prescription.. After pleading the general issue, they admitted the execution of the timber deed attacked (of which they averred the legality and regularity). They averred that defendant the Davis Bros. Lumber Company, Limited, had acquired all of the rights of J. M. & Y. M. Davis in and to said timber, and that Davis Bros. Lumber Company, Limited, was then claiming the ownership thereof.
They averred that immediately after the purchase of said timber by the said J. M. & V. M. Davis, they went into actual possession of same, and caused it to be returned for assessment with their other property, and regularly paid the taxes thereon, and exercised full dominion and control over the same as absolute owners until the transfer to your defendant, and immediately thereafter your defendant took actual possession of said timber, and has since then exercised full, complete, and perfect dominion and control over same, and has caused said timber to be regularly assessed with its other property, and paid the taxes thereon, and fully accepted the transfer by its purchase from J. M. & Y. M. Davis, who fully accepted said pur- ■ chase by executing the deed, and paying the portion of the purchase price stipulated therein, and that said J. M. & V. M. Davis and *1053 your defendant were and are fully bound by all of the terms, conditions and stipulations contained in the above-alleged timber deed; and, in addition to haying accepted same as aboye alleged, your defendant did on the ■-day of-, 1907, execute a full and perfect acceptance of all of the lands and timber owned by it, including the above-described timber, and fully bound and obligated itself to carry out all the terms, stipulations, and conditions set forth in the various purchases by itself and its authors as is more fully shown by notarial act passed before Charles J. Halen, notary public of the parish of Jackson, state of Louisiana, on said date, and which is duly recorded in the conveyance records of your said parish of Lincoln, and which document was executed and recorded long prior to the institution of this suit.
Defendants, further answering, specially denied that they or either of them practiced any fraud on the plaintiff, or that the plaintiff is ignorant and incapable of attending to his own affairs. Defendants, therefore, prayed that the demands of the plaintiff be rejected at his costs, and, in the alternative, for judgment against said plaintiff for the full sum of $202, the amount of alleged tender. Defendants prayed for all other needful orders and decrees, and for general relief.
The district court rendered judgment in favor of the plaintiff and against the defendants, annulling and setting aside the agreement made and entered into between said Z. T. Kent and said J. M. Davis as to all the pine timber of 10 inches and greater in diameter at the stump, growing, standing, and being on the N. W. % of S. E. %, E. Vi of S. W. %, S. W. % of S. W. Yi, section 13, and N. W. % of N. W. %, section 24, township 17 N., range 5 W., La. Mer., situated in Lincoln and Bienville parishes, La., dated November 11, 1899, and recorded in Book Q of Conveyances in and for Lincoln parish, La., on page 261, and that same be canceled on said record, and that plaintiff, Z. T. Kent, be decreed to be the owner of the above-described timber.
It further decreed that there be judgment in favor of the Davis Bros. Lumber Company, Limited, against the said Z. T. Kent for the sum of $101, with 5 per cent, interest thereon from date hereof. All costs of this suit to be paid by defendants.'
The defendants have appealed.
Opinion.
Plaintiff’s counsel in their brief state that:
“The prescription of four years pleaded against this action, in so far as it seeks to annul the agreement for lesion for moiety, was not contested by him, and was either sustained by the court or that he himself took a voluntary nonsuit to that part of the petition; that, at any rate, the question of lesion beyond moiety was eliminated from the suit, and is not now contested.”
The agreement referred to in plaintiff’s petition reads as follows:
“This contract and agreement made and entered into this the 11th day of November, 1899, by and between Z. T. Kent, party of the first part, and J. M. and V. M. Davis, party of the second part, witnesseth: That the party of the first part being the owner in fee simple of the following land situated in the parish of Lincoln, and state of Louisiana, to wit:
“N. E. of N. W. Vi and N. W. of 8. E. Sec. 13 T. 17. Rge. 5; S. W. S. W. Sec. 13; S. E. of S. W. see. 13, T. 17. Rge. 5; N. W. N. W. Sec. 24 T. 17. R. 5 — Bienville parish, has this day, for and in consideration of the sum of one dollar paid to the party of the first part hy the party of the second part, the receipt of which is hereby acknowledged, granted, bargained, sold and conveyed, and by these presents does hereby grant, bargain, sell and convey unto the party of the second part and unto its successors, heirs and assigns all the pine timber of ten inches and greater in the diameter at the stump growing, standing and being on said land, for the price of fifty cents per thousand feet, board measure, payable monthly at the end of each month as same shall be cut and removed. That; for the purpose of felling, cutting and removing said timber from said lands, the party of the second part, their heirs and assigns, are to have possession of said land, and the right to cut out and construct roads and tramways over and through the same (field clearing and other improvements now on said land not to be interfered with or encroached upon, however except by special agreement) and the right to use the same for the removal of timber which they may *1055 purchase on land adjoining and beyond that described herein, and to have free ingress and egress for their employes, teams and vehicles, into, upon and off the same, for the period of -years from this date, at the end of which time this contract is to be void as to future operations thereunder.
“Be it further agreed, that if the said T. M. and V. M. Davis, party of the second part, pay unto 55. T- Kent, party of the first part, the sum of {¡>100 within sixty days, or less from the above date, this contract shall be in full force and effect; otherwise, it shall be void. Said $100 if paid to apply as payment on timber when cut.
“55. T. Kent.
“J. M. Davis.
“Witness: V. M. Davis.
“Wm. Pusca.”
Plaintiff’s counsel in their brief say:
“It will be seen that 50 cents per 1,000 payable monthly at the end of each month as the same shall be cut and removed is only an incident in the contract for which the $1 is the consideration, and is not the consideration of the contract. Defendants do not bind themselves to cut and remove the timber; on the contrary, they carefully provide that, after a lapse of blank years, the contract is to be void as to future operations thereunder. In other words, if for any cause they should in the future cut and remove the timber, they could say to Kent: ‘We do not desire to cut and remove the timber, so the contract is at an end, and you can do what you please with it.’ But there is no time fixed within which Kent can put an end to the contract. It is perfectly clear that the only agreement or contract made by J. M. & V. M. Davis is to pay for the timber monthly as it is cut and removed (if they cut it at all), and that that is the only obligation they assume. If they had thought they had made a contract to cut and remove the timber at 50 cents per 1,000, they would have known that was a sufficient consideration for the contract and would not have put in the consideration of $1. The last clause of the contract is certainly peculiar, and reads like an effort to deceive Kent into believing that they had obligated themselves to cut and remove the timber.
“What contract is it which the clause says shall have full force and effect? Manifestly the contract to pay 50 cents per 1,000 monthly at the end of each month as the timber is cut and removed, but there is no contract to cut and remove the timber, and no such contract was intended by the Davises. The $100 was evidently paid for the purpose of trying to bind Kent to the contract by making this insignificant payment. The district judge very properly said that $100 was no consideration for holding about $2,000 worth of timber for eight years or for an indefinite time. The instrument is null either as a contract or as a sale for want of legal consideration. It is also null for want of mutuality of obligation. It is null for want of mutuality of obligation, for it contains a potes-tative condition entirely dependent on the will of J. M. & V. M. Davis. It is left optional with them whether or not they ever cut and remove the timber. It is clear from the language of the act that the timber standing on the land at the time of the instrument is not sold and delivered to .1. M. & V. M. Davis, so as to force them to pay for all the timber standing on the land at the date of the instrument, but that they will only pay for so much timber as they cut and remove. If the timber should be destroyed by storm, forest fires, or by insects as is frequently the case, they would not cut and remove the timber, and no certain thing would be sold, and it might be that a third or a half of the timber might thus be destroyed, and the thing sold would be uncertain. Clark v. Comford, 45 La. Ann. 511, 12 South. 763.
“There was no- consent. It is clear from the language of the instrument that plaintiff was desiring and intending to sell all of the pine trees standing on the land 10 inches and greater for price' of 50 cents per 1,000, while it is equally clear that the vendees only intended to pay for such timber as they might cut and remove, and, if they never cut any by reason of the timbers being destroyed, nor saw fit to cut any, they would not buy the timber and pay for it. They did not bind themselves to do so, and plaintiff could not force them to do so under the terms.of this artfully worded agreement. Plaintiff had one object and defendants quite another.
“There was no certain or serious price. The $1 consideration was no serious price and the price of 50 cents per 1,000 feet when cut was not certain, because it was impossible to know what amount of timber might be cut and removed, if any, and if none of it was cut and removed or if it was destroyed, there would be nothing sold and consequently no price, or, if different portions of it would be destroyed, there would be different quantities of timber cut, and therefore a different price. There was no certain thing, and therefore no certain price. The price must be serious, and, if it is out of all proportion, it invalidates the same. D’Orgenoy v. Droz, 13 La. 382; Prude v. Morris, 38 La. Ann. 767; Lamotte v. Lamotte, 48 La. Ann. 572, 19 South. 570.
“The instrument cannot be considered as evidencing a sale, for the reason that the timber has never been put at the risk of the pretended purchaser.
“As soon as the contract of sale is completed, the thing sold is at the risk of the buyer. Civ. Code, art. 2467.
“It is the very essence of a sale that it divest the ownership of the seller in the thing sold and transfer it in full ownership to the buyer. Herold v. Stockwell, 32 La. Ann. 952; Allen, Nugent & Co. v. Buisson, 35 La. Ann. 109; Gumber & Co. v. Beer, 36 La. Ann. 493, 494. It is not pretended by any one that this timber was or is at the risk of the purchaser; the contract being carefully worded so that the timber pretending to be transferred to them could not be considered at their risk. The language of the act is, “Granted, bargained, sold and con *1057 veyed unto the party of the second part,” etc., but the word “deliver” is carefully omitted. Then follow the words:
“ ‘Eor the price of fifty cents per thousand feet board measure payable monthly as the same shall be cut and removed.’
“It cannot be disputed that the ownership of the timber remains in Kent, and, if it shall be destroyed, it would be his loss, and, if this be the case, no sale of the timber has ever been perfected or completed, and, after waiting eight years, he is certainly justified in demanding that such an iniquitous contract be declared a nullity, and in demanding that the registry of the same be erased from the records of Lincoln parish. Such contracts are terminable at the will of any of the parties thereto. Landeche v. Sarpy, 37 La. Ann. 837.”
Plaintiff refers the court to Civ. Code, art. 2034; Martel v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 South. 253; Murray et al. v. Barnhart, 117 La. 1023, 42 South. 489; Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co., 119 La. 836 et seq., 44 South. 481; Blackshear v. Hood, 120 La. 966, 45 South. 957; Union Sawmill Co. et al. v. Lake Lumber Co., 120 La. 106, 44 South. 1000; Thompson v. Union Sawmill, 121 La. 318, 46 South. 341; Campbell v. Lambert & Co., 36 La. Ann. 37, 51 Am. Rep. 1; and Landeche v. Sarpy, 37 La. Ann. 837.
Defendant’s counsel in their brief say that:
“There is no pretense that at the date of the contract 50 cents per 1,000 feet or the consideration stated in the contract was not full value for the timoer conveyed, and the evidence nowhere intimates that there was any fraud or deception practiced. They declare that they attached no importance to the consideration of $1 expressed in the contract for the payment of $100 additional thereto perfected the contract, and then and there became a perfectly legal and subsisting contract just as in the Shepard Case, 121 La. 1011, 46 South. 999.
“They say the sum of $101 was paid for the right to cut and remove timber from the lands described, with an obligation to pay any sum in excess of the amount that the timber actually cut would amount to at 50 cents per 1,000 feet, and 19 Am. & Eng. Ency. of Law, p. 524, declares that the sale of standing timber is usually made at a given price per 1,000 feet exactly as this sale was made, except that there has been a portion of the price paid in cash.
“They urge that the present is identical with the Shepard Case, and should be governed and controlled by it. They maintain that the case of Thompson v. Union Sawmill was passed on upon a different state of facts and upon different questions of law'.
“They refer the court to Globe Lumber Co. v. Lockett, 106 La. 414, 30 South. 902; Jennings-Heywood Company Case, 119 La. 793, 44 South. 481; St. Louis Cypress Co. v. Thibodeaux, 120 La. 834, 45 South. 742; Shepherd v. Davis Bros. Co., Ltd., 121 La. 1011, 46 South. 999; and Civ. Code, art. 2043.”
The plaintiff (Kent), the party of the first part, and the defendants J. M. & V. M. Davis (the party of the second part), having both attached those signatures to the instrument of the 11th November, it evidenced an agreement of some kind between the parties. Whether the act so signed evidenced a valid and binding contract between them is a different question. Civ. Code, art. 1762.
It evidently did not ipso facto bring about a present sale of any kind, for the writing exiDressly declared that:
“If J. M. and Y. M. Davis pay to Z. T. Kent the sum of $100 within 60 days or less from date then this contract shall be in full force and effect, otherwise it shall be void, said $100 if paid to apply as payment on timber when cut.”
Until this payment of $100 was made, the instrument remained an offer by the plaintiff to sell the timber thereon referred to on the terms therein declared; the offer being left open to the Davises for acceptance for 60 days, and their acceptance of the oiler to be evidenced by the payment by them of $100 to Kent. Civ. Code, art. 1811. The $1 consideration was obviously inserted in the act by the Davises under the belief that a present fixed consideration of some kind was necessary in order to bind Kent to his obligation of holding his offer open for 60 days.
The parties of the second part paid the $100, which payment by the terms of the agreement was made the condition upon the happening of which the offer previously made should ripen into a contract. The purpose of this consideration having been accomplished, and the “offer” having merged into a contract, there is no issue before the court' as to whether any consideration at all was needed as between Kent and the .Davises to ' *1059 hold the former to his open offer, and none as to whether (if one was needed) the. amount agreed upon by the parties was sufficient for that purpose. We have, therefore, to direct our attention to ascertaining whether or not there be in the contract everything needed to give it validity and binding force, for it is upon that instrument that the rights and obligations of the parties have to be determined.
Eliminating for the present from the instrument everything having reference to the $1 consideration and the later payment of the $100, the agreement reads that Kent “thereby bargained, sold, and conveyed unto the party of the second part, and unto its successors, heirs, and assigns, all the pine timber of 18 inches and greater in the diameter at the stump, growing, standing, and being on said land (the land having been described) for the price of SO cents per 1,000 feet board measure, payable monthly at the end of each month.
It will be noticed in this particular agreement that, as written, the time at which the Davises are to commence cutting and removing the timber is not given nor is the time within which it is to be cut and removed, neither is the quantity of timber to be cut any one month fixed. Plaintiff’s contention is: That he is unable to compel the defendants either to “specifically perform” any obligation which has been assured by them nor can he “recover damages” for noncompliance with any obligation on their part. That, as matters stand, the court would be unable to grant him relief of any kind inasmuch as, in order to do so, it would have in reality to make a contract between the parties instead of enforcing one already made. That, while perhaps the court might compel defendants to commence cutting, there would be no authority on its part to fix the quantity of timber they should cut each month, nor to fix the date at which the cutting and removing it should end. That defendants could reply to any attempt made to coerce them that the amount of the timber to be cut in any month being left open, subject to his own will, the court would act arbitrarily should it undertake to order them to cut any particular quantity a month. Plaintiff’s contention is that it was not his purpose and intention to enter in a mere executory contract whereby the objects covered by the contract were to remain at his risk and at defendants’ will for an indefinite time in the future, but to bring into existence a contract which should at once, on acceptance of its terms and through mere consent operate ipso facto, a transfer of the ownership of the things covered by it, and place them immediately at the risk of the other party.
That if the court should adopt defendant’s construction of the contract, and hold all the pine trees on the land of the size mentioned in the contract, to be at his risk until cut for an indefinite period, then the consideration of 50 cents per thousand feet for timber to be cut and as cut would not be a serious consideration, but a vile price. That article 1803 of the Civil Code declares that:
“When one party proposes and the other assents, then the obligation is complete and by virtue of the right, each has impliedly given to the other, either of them may call for the aid of the law to enforce it.”
That his inability to successfully call for the enforcement of this agreement, either through specific performance or through damages, establishes the fact that there is no valid contract between the parties, and that it is unconscionable and inequitable. That an agreement whose terms are so indefinite and uncertain as to place the obligee at the mercy and will of the obligor is no contract at all, though it may have the form of one. Plaintiff urges that, although eight years have passed since this agreement was signed, the Davises have not moved a step towards cutting any trees, and have no intention of *1061 doing so in the future, unless they think proper, and he is without a remedy to force them to do so. That under article 1762 of the Civil Code a contract must not be confounded with the instrument in writing by which it is evidenced. The contract may •subsist, though the written act may for some •defect be declared void, and the written act may be good and authentic, although the contract it witnesses be illegal. The contract itself is only void for some cause or defect determined by law.
The Davises undoubtedly gave their consent to an agreement of some kind. Did a valid contract result from that consent? We do not think there was any uncertainty as plaintiff claims there was in the things sold. Article 1886 declares that an obligation must have for its object something determinate at least as to its species. The quantity of a thing may be uncertain, provided it be capable of being ascertained. The things covered by the agreement are all (not a part) the pine trees on the land of the size mentioned. 'There was no difficulty in ascertaining immediately after the agreement was entered into how many trees of that kind and size there were on the land. The fact that payment of the price was to be made from time to time as trees should be cut would not ■stand in the way of an examination of the trees on the place with the view of fixing the number. Should there be error in fixing the number, it could be corrected when the trees came to be cut. Such a possible error would not give rise to a ground for claiming the nullity of the agreement for uncertainty. It could not be said in advance that an error would be committed.
It cannot be said that the price is uncertain because of the fact that it might so happen that an estimate made immediately after the agreement as to the number of trees might be erroneous, and therefore from that fact there might arise uncertainty as to the full price which would be ultimately received. The price was fixed and not uncertain — 50 cents per 1,000 feet for all the trees on the land of the size mentioned. Should {here be error in the estimate made of the trees, then the price fixed would simply be reduced to conform to the actual facts.
It cannot be said in advance and on the face of the instrument that there was any uncertainty in the quantity sold or the price of the trees, because as a possibility at some future time some of the trees which were on the land of the size mentioned should be thereafter destroyed by fire or storms or insects.
Article 1898 of the Civil Code states that where the consideration of the contract really exists at the time of the contract, but after-wards fails, it will not affect the contract, if all that was intended by the parties be carried into effect at the time. The destruction of property sold after the sale is perfected without the fault of the seller is a case governed by 'this rule; but (article 1899 declares) if the contract consists of successive obligations to be performed at different times, and the equivalent is not given in advance for the whole, but is either expressly or impliedly promised to be given at some future period, then, if the cause on the contract corresponding to either of the suceesí •sive obligations should fail, the obligation depending on it will fail also. Thus in leases for 10 years the obligation to pay the yearly rent ceases if the property which is leased should be destroyed.
The contract in this case is one which under the classification of the Civil Code is designated as a “contract to give.” If in a contract of that character the obligation to deliver is an object which is particularly specified, it is perfect by the mere consent of the parties. It renders the creditor the owner if it be not delivered, puts the thing at his risk from the date of the obligation, *1063 if the contract is one of those which purports a transfer. If, however, the debtor is in default for not having made the delivery, it is at his risk from the time of the default. Article 2458 declares that when goods, produce, or other objects are not sold in lump, but by weight, by bale, or by measure, the sale is not perfect, inasmuch as the things so soid are at the risk of the seller until they be weighed, counted, or measured, but the buyer may require either the delivery of them or damages if there be any in case of nonex-eeution of the contract. If, on the contrary, the goods, produce, or other objects have been sold in a lump, the sale is perfect, although these objects may not have been weighed, counted, or measured.
The contract in this case covered all the pine trees of a certain description standing or being on a designated tract of land. Plaintiff consented to sell not prospectively, but presently, all of those particular trees, and the defendant also consented to buy, not prospectively, but presently, all of those particular trees.
Not only were the trees covered by the contract so described as to fix their identity, but their identity was further fixed by a description of the place where they were selected. There was no mingling or mixture of those trees with others of a like description. In the brief filed on behalf of the plaintiff it was assumed that under the agreement the trees on the land remained at his risk; that the sale of the trees was held in check by a suspensive condition as the price stipulated is to be paid when and as the trees are cut.
We do not understand these words as containing a “suspensive condition” to a sale and as postponing the creation of a contract of sale until the trees are cut. These words refer not to the creation of a contract, but to the payments to be made under an agreement already agreed to. They do not reach back to the contract itself, but are what is known as “accidental stipulations” in a contract.
What effect this “accidental stipulation” as-to payment may have in the future on the-obligation of parties we are not called upon to say, as the facts of the case have not taken such shape as to make a decision necessary. It is not presented in this case under such circumstances as to authorize us to declare' the contract on the face of the instrument a nullity. If the plaintiff has suffered any injury, so far it has been the result of his own-inaction not of the terms of the contract.
This action as brought is one seeking to have a particular contract declared “to be a nullity.” We have to deal with it as such, and not as an action for “rescission of a contract.”
Before a contract can be “rescinded,” the obligor must be placed in default. Plaintiff has not placed defendants in this case in default. The contract involved in this case can be made more definite, but it is not a nullity.
For reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is, annulled, avoided, and reversed. Plaintiff’s demand is hereby dismissed without prejudice.