### SHREVEPORT LAUNDRIES, Inc., v. TEAGLE. *

### SAME v. CONNELL.

### Nos. 4061, 4169.

Court of Appeal of Louisiana. Second Circuit.
Feb. 16, 1932.

---

*Rehearing granted March 16, 1932.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for Shreveport Laundries, Inc.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for D. C. Connell.

Clifton F. Davis, of Shreveport, for O. B. Teagle.

TALIAFERRO, J.

These two cases involve practically the same issues and legal principles, and have been consolidated for trial in this court. Each defendant, while in the employ of plaintiff as solicitor and collector on a designated route in the city of Shreveport, was required to sign a written contract containing, among other provisions, the following, viz.:

"First.

"The Company hereby employs the Solicitor to solicit customers for laundry, dry cleaning and other services performed by it; to receive from and deliver to such customers all clothing and other articles the subject of such services and to collect all amounts due the Company for such services from such customers.

"Fourth.

"The Company will place in the charge of the Solicitor a particular route or routes, which may, at any time be changed by the Company. * * *

"Fifth.

"It is recognized by the parties hereto that the patronage and good will of all customers situated along any route or routes in the charge of the Solicitor from time to time, and the prospective patronage and good will of prospective customers situated along such route or routes, constitute a valuable right, which is now and shall remain the property of the company, and all patronage and good will retained or secured by the efforts of the Solicitor shall form part of such right and belong to the Company. In order to preserve the full value of such right the Solicitor agrees that he will not, for a period of six (6) months after the termination of this agreement, whatever be the reason for such termination:

"(a) For himself or any other person, firm or corporation, solicit any customers for laun-

dry, dry cleaning and/or other service or services being rendered by the Company at the date of such termination; or

"(b) In any way, directly or indirectly, divert, take away or interfere with, or attempt to divert, take away or interfere with, any of the customers of the Company.

"This agreement shall remain in effect for one (1) year, and thereafter from year to year, unless before the end of any year either party gives notice of termination to the other. At any time, however, either party may terminate this agreement by giving the other party at least two weeks notice to that effect, and the Company may, at any time, terminate this agreement without any notice in the event of the Solicitor's failure to comply with the terms and provisions hereof. * * * *"

Teagle was discharged by plaintiff after giving of the two weeks' notice specified in the contract, and after their failure to reach an agreement for a reduction of compensation for his services for the future; and Connell quit the employment of plaintiff after he had given the notice aforesaid. Teagle entered the employ of another laundry company, a competitor of plaintiff, and, presumably, was soliciting on the route described in the contract with plaintiff for laundry, dry cleaning, etc., and defendant Connell was preparing to do likewise, when prevented by temporary restraining order.

Teagle signed the written contract with plaintiff on January 4, 1930, and was discharged December 5th following. Connell signed contract on October 21, 1929, and severed relations with plaintiff May 2, 1931. It was made clear to them at the time their signatures were requested to be affixed to the written contracts that further employment of them depended on their favorable response to the request. Plaintiff's president admits both defendants would have been discharged if they had not signed the contract tendered them.

Plaintiff's petition in the suit against Teagle alleges:

4. "That the aforesaid O. B. Teagle has since leaving the employ of petitioner and is now soliciting within the route first described herein for laundry, dry cleaning and other services such as were being rendered by your petitioner during the employment of Teagle thereon and at the date of the termination of the aforesaid contract through other employees; that the laundry, dry cleaning and other services being solicited by the said O. B. Teagle is work in direct competition with your petitioner and that it is informed and so alleges that such solicitation is upon behalf of Moore's Laundry, Inc., a corporation operating a laundry in direct competition with petitioner in the employ of which the

said O. B. Teagle is now working, in violation of his agreement with petitioner."

5. "That the aforesaid O. B. Teagle has violated and is further violating his agreement, as set forth in paragraph five of the aforesaid contract, by attempting to divert, take away and interfere with the customers of your petitioner within the territory first described by requesting and inducing them to permit their laundry, dry cleaning and other work of a similar character to be done by parties other than petitioner, and particularly Moore's Laundry, Inc.; and because of such violations, petitioner fears and believes that said O. B. Teagle will further violate his agreement by soliciting patronage of the class of work described within the route referred to herein as route No. 34 of the Model Cleaners & Dyers plant."

In his answer, defendant Teagle admits that, after his services were dispensed with by plaintiff, he secured employment with another laundry in the city of Shreveport, a competitor of plaintiff, which had been organized since plaintiff was created, and was so employed when this suit was filed; that he had not violated any of the legal or equitable rights of plaintiff, but was only attempting to earn a living in the manner he had earned same during the previous four years.

Specific defenses set up by defendant may be summarized as follows: (1) That there was no consideration flowing from plaintiff to defendant for execution of the fifth article of the contract; (2) that same is null and void as being against public policy and in restraint of trade; (3) that same is inequitable, unreasonable, and unilateral.

These defenses, with others, are invoked in the Connell case, also.

The Teagle case was decided by Judge Bell, who held the contract to be null for lack of a serious consideration. Judge Roberts decided the Connell case, holding the contract to be valid, and ordered it enforced as written. In both cases plaintiff seeks issuance of injunction restraining defendants from violating the terms of the written contract between them by soliciting business for plaintiff's competitor on the route that they had previously worked while in employ of plaintiff.

Plaintiff was incorporated in July, 1929, for the purpose of absorbing, and in fact did actually absorb, nearly all the laundries and dry cleaning establishments in the city of Shreveport, thereby, it is alleged, effecting a monopoly of these lines of business in that city. At that date, and for some two or three years prior, the defendants were in the employ of two of the companies plaintiff acquired, and thereafter remained in plaintiff's employ, performing the same duties as theretofore, and for the same compensation, until discharged as above mentioned.

Prior to the signing of the contract, each defendant's salary was $27.50 per week, plus a commission on collections; and this same salary was fixed in the new contract without any specific reservation in plaintiff to alter same while defendant worked thereunder. Therefore it appears clear to us that the compensation coming to defendants under the new contract, being the same as in the old one, was not the controlling cause, nor the primary consideration, that induced them to sign it. Under the stress of existing conditions, and with the knowledge of certain discharge if they refused to sign the proffered contract, they affixed their signatures to it, giving plaintiff the right to terminate it on two weeks' notice, and bound themselves, respectively, not to engage in the pursuit of the avocation by which they earned a living, on the route embraced in their employment (a very large part of the city of Shreveport) for a period of six months. As stated by Judge Bell:

"This defendant gave up his right to earn $715.00 in order that he might have the sum of $55.00. The plaintiff gave up nothing, but merely gave to the defendant a contract of employment which could be terminated at the end of two weeks.

"This Court has nothing to do with the adequacy of the consideration, but if what one gives up is out of proportion to the obligation which he assumes, then a court does have something to do with it. We think that the consideration which was given in this case; that is, the position for a period of two weeks, was altogether out of proportion to the obligation assumed by this defendant."

It is true that according to the language of the contract defendant was engaged for one year; but this provision was virtually nullified by the overriding stipulation vesting in plaintiff the right to dispense with his services, without cause, after two weeks. It is also true defendant was given the right to terminate the contract after two weeks' notice to plaintiff, and, in either event, no further restriction or duty rested upon plaintiff; not so with defendant.

Another unequal effect of this contract lies in the fact that it was possible for plaintiff to so manipulate it as to dispense with defendant's services, without cause, before the expiration of the year, or compel him to accept less compensation than that fixed in the contract, or accept conditions more onerous than stipulated in the agreement, before being paid the contract salary. This is clearly illustrated by the course plaintiff pursued towards both Teagle and Connell. The former was discharged when he would not accept a salary less than that stipulated in the contract; while the latter left plaintiff's service, after giving two weeks' notice, when plaintiff sought to impose conditions on his services more onerous than those of the writ-

ten contract, as a condition precedent to being paid the contract salary.

What may be sufficient consideration to give vitality to a contract of the kind in question is a matter about which much difference of opinion can arise. However, it is certain that under the law of this state the consideration must be a serious one, and not altogether out of proportion to the obligation assumed. A different rule prevails under the common law, where any lawful consideration is deemed sufficient. Each case must be determined from its own facts.

■ Contracts of this character should not be enforced as written unless supported by a consideration, such as required by our law, and not then unless it clearly appears that not to require enforcement would result in substantial loss and injury to the opposite party. As aptly said by Judge Roberts in the Connell case:

"The remedy sought by plaintiff is a harsh one, and a justifiably unpopular one with employees generally, and should not be applied by the courts oppressively, nor in any case, unless the restriction sought to be imposed is clearly reasonable and necessary for the protection of plaintiff's rights."

The fundamental basis of plaintiff's contention rests upon its asserted ownership of, and property interest in, the patronage and good will of all customers along the route worked by defendant for it. It is this right which was sought to be protected and preserved by the contract. The evidence discloses, in fact it is not disputed, that the good will of a line of customers, built up on a given route, is brought into existence mainly by two concurring factors, viz.: Satisfactory service by the employer and a solicitor who has tact and intelligence, and whose contact with his customers, from time to time, is such as to win and hold their confidence and friendly attitude. A discourteous and unaccommodating solicitor cannot succeed for himself or his employer. Therefore, the solicitor who has contributed so materially to the building up of a successful business on his route has a very valuable interest therein, concurrent with his employer, and could not be expected to divest himself of it without substantial consideration flowing to him. This right was vested in defendant when he signed the contract with plaintiff. The contract would strip him of it without anything of value in return, save retention in employment under very precarious conditions. But for the contract this right would have been retained by him unimpaired, and he would have been free to have exercised it for his own personal benefit and advantage.

■ Counsel of plaintiff cite and quote from many cases from the jurisprudence of the common-law states involving contracts such as we are now considering. If the laws of Louisiana were the same as these states, with respect to what is a sufficient consideration to support a contract, such cases would constrain us to sustain plaintiff's position; but, as stated before, any lawful consideration meets the requirements of the common law while a serious consideration, one not out of proportion to the obligation assumed, is required by the civil law.

The only Louisiana cases bearing upon the main issues in these two cases under consideration, which have been cited by counsel, are Blanchard v. Haber, 166 La. 1014, 118 So. 117, 118, and Cali v. National Linen Service Corporation (C. C. A.) reported in 38 F. (2d) 35. In the Blanchard Case, Dr. Haber was employed by Dr. Blanchard to perform dental services for him at a salary of $60 per week for a period of ten years. It was provided in the contract that either could terminate it at any time by giving to the other thirty days' notice. It also provided that if the contract was terminated Dr. Haber could not practice his profession, either for himself or for any other, for ten years, within a certain part of the city of New Orleans, which really included the main business section thereof. The Supreme Court in discussing the case said, viz.:

"The peculiar feature of the contract between Dr. Blanchard and Dr. Haber, which made it entirely unilateral, was that Dr. Blanchard could put an end to the contract at any time, from the moment of signing it, by giving thirty days' notice, and could thus put Dr. Haber out of business as a competitor for the period of ten years; whereas Dr. Haber could not recede from the contract without paying the penalty of going out of business as a competitor of Dr. Blanchard for the period of ten years. In fact, the penalty stipulated, to be imposed upon Dr. Haber for the benefit and advantage of Dr. Blanchard, which Dr. Blanchard could invoke against Dr. Haber at any time and without any cost to Dr. Blanchard, and which forbade Dr. Haber to withdraw from the employment within the period of ten years, was not merely that Dr. Haber should not become a competitor of Dr. Blanchard, but, virtually, that Dr. Haber should go out of business as a dentist anywhere in the city of New Orleans; because the area within five blocks each way along Canal street, from No. 936 Canal street, and five blocks each way from Canal street, embraced nearly all of the business area of the city, and took in all of the office buildings suitable for dentists or other professional men.

"It is well settled that an instrument purporting to represent a continuing contract which only one of the parties is bound to carry out, for which he has received no price or consideration, and for which the other party has incurred no obligation, is not a

valid contract. Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1; Murray v. Barnhart, 117 La. 1023, 42 So. 489; Blackshear v. Hood, 120 La. 966, 45 So. 957; Caddo Oil & Mining Co. v. Producers' Oil Co., 134 La. 711, 64 So. 684; Nelson v. Barber, 143 La. 783, 79 So. 403; Kennon v. Brooks-Scanlon Co., 148 La. 120, 86 So. 675; Heeb v. Codifer & Bonnabel, 162 La. 139, 110 So. 178.

"Under the civil law, as at common law, it is not necessary that the consideration received or to be received for incurring an obligation shall be an equivalent consideration. The question of adequacy of the consideration is a matter for the parties themselves to determine. But, while at common law any lawful consideration for a contract is deemed sufficient, the civil law requires that the consideration must be serious and not altogether out of proportion to the obligation. Article 2464 of the Civil Code so provides, specifically, for the contract of sale; and in Murray v. Barnhart, 117 La. 1030, 42 So. 489, it was held that the doctrine of the civil law in that respect, being as old as the civil law itself, was applicable, not only to contracts of sale, but to all other contracts.

"It is argued on behalf of the appellee that the consideration expressed in this contract —the salary to be paid, the association with the great number of patients and the knowledge to be gained in a modern dental establishment—was a serious consideration, and was not out of proportion to the obligation imposed upon Dr. Haber. As a matter of fact, the salary of $60 per week was the consideration for which Dr. Haber gave his services, and the best evidence that it was nothing more than a fair consideration for his services is the fact that the salary was increased one-third—that is, to $80 a week— nine months after the contract was signed. The association with the patients coming under Dr. Haber's care, and the knowledge to be gained, were unavoidable incidents of the employment. It is true that Dr. Blanchard could not abrogate the contract, and impose the penalty upon Dr. Haber, without giving him thirty days' notice and paying him the salary during the thirty days; but the compensation for that obligation on the part of Dr. Blanchard was the service to be rendered by Dr. Haber during the thirty days."

The court held that this contract was invalid for lack of sufficient consideration to Dr. Haber for the obligation he imprudently executed. It is conceded that the court could have justifiably held the contract invalid as being against public policy.

Judge Bell made the following comment on the two Louisiana cases, which we adopt:

"The above quoted case contained obligations on the part of the employee much more onerous than the case now under consideration, and the Cali Case likewise contained more burdensome obligations, although not as burdensome as in the Blanchard Case. In the Cali Case the consideration was practically the same as in the case under consideration here, with the exception that the employee in that case obligated himself not to work for a competitor for a period of twelve months, and the contract likewise provided for termination on one week's notice. Judge Foster, as the organ of the U. S. Circuit Court of Appeals, having cited many cases from the Louisiana courts, including the Blanchard Case, ended his opinion by saying:

" 'There is nothing in the case of Blanchard v. Haber, supra, compelling a reversal in this case. Doubtless, had the salary paid Haber been considered adequate and the restriction reasonable, the decision would have been different.'

" 'Each case must depend on its own facts. In the case at bar, we think the restriction was reasonable and the consideration arising from the contract of employment was sufficient.'

"In our opinion, the Cali Case contained more burdensome obligations than the present case, and the consideration in the Cali Case was less than in the present case. The consideration in all of the cases, the present one, the Cali Case and the Blanchard Case being solely the employment alone. We think that Judge Foster's comment on the Blanchard Case is entirely erroneous. The Supreme Court did not say, or even intimate, that the salary paid Dr. Haber was inadequate. It did intimate that the restriction both as to time and territory was unreasonable.

"The testimony in the present case shows that the salary paid to this defendant was only the usual salary paid to a laundry driver at that particular time, and so the salary itself does not in any way enter into the contract as a consideration for the restrictions placed upon the defendant. The sole consideration was the employment of this defendant by the plaintiff.

"If such be a serious consideration and in proportion to the obligations assumed by him, then it is a sufficient consideration. It is not necessary that it be an equivalent consideration."

In the Connell case, there is one special defense set up which is not made in the Teagle case, but as we hold that the contract in each case is unenforceable for lack of a serious consideration flowing to the defendants, and that the obligations by them assumed therein were out of proportion to the consideration by them received, it is unnecessary to consider such defense.

Judge Roberts, in the Connell case, gave written reasons for his judgment holding the contract enforceable as written. He held that the consideration for the execution of the contract was employment of defendant

on the terms therein expressed, and that such consideration was sufficient. His process of reasoning is extremely forceful, but we are unable to agree with him on the vital question of consideration.

For the reasons herein assigned, the judgment appealed from in the Teagle case is hereby affirmed at cost of plaintiff; and the judgment appealed from in the Connell case is reversed, and plaintiff's suit dismissed at its cost.